# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

COREY LEE WEIMER,

Defendant-Appellant.

UNPUBLISHED
June 27, 2017

No. 330100
Monroe Circuit Court
LC No. 15-041785-FH

Before: SAWYER, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of domestic violence, third offense, MCL 750.81(2) and (4). The trial court sentenced defendant to one year in the county jail and five years' probation. We affirm.

## I. FACTUAL BACKGROUND

Defendant is the father of an eight-year-old son (hereinafter "the complainant"). Around 12:30 a.m. on a Sunday, the complainant was watching the movie "Wreck it Ralph" in his bedroom at defendant's duplex. Defendant got up from his chair in the living room and walked into the complainant's adjoining bedroom. Defendant gave him three seconds to turn off the television, and when the complainant did not comply, defendant walked over and turned the television off. According to the complainant, when defendant turned off the television, the complainant said, "Hey, I was watching that." Defendant asked, "What did you say? What did you say?" The complainant testified that defendant picked him up with one hand and threw him against the wall. After hitting the wall, the complainant fell onto his bed. The complainant hit his head on the wall, resulting in a bruised eye and a cut on his forehead. Defendant picked the complainant up again and threw him towards the edge of the bed. When the complainant landed on the bed, he split his lip open on the iron bedframe. Finally, defendant picked his son up a third time and threw him onto the ground. The complainant's face hit the floor, and he sustained a rug burn from his cheek down to his chin. Afterwards, defendant had the complainant take a shower to wash the blood off his face.

Defendant argues that he was (1) denied his constitutional right to confront the witnesses against him because the trial court denied his request to recall the complainant, (2) denied his constitutional right to present a defense because the trial court denied the admission of a Dragon

-1-

Ball Z video, and (3) denied his constitutional right to the effective assistance of counsel. Defendant's arguments are unavailing.

## II. CONFRONTATION

Defendant first argues that the trial court erred when it denied his request to recall the complainant during defendant's case in chief. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve a trial court's decision involving a confrontation clause issue, a defendant must object in the lower court. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011). While defendant asked to reserve the right to call the complainant during his case in chief, defendant did not raise an objection on confrontation grounds, and therefore, this issue is unpreserved.

Generally, the question whether a defendant was denied the constitutional right to confront a witness is reviewed de novo. *Benton*, 294 Mich App at 195 (citation omitted). However, unpreserved issues of constitutional law are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Under the plain error standard, the "defendant bears the burden of demonstrating a 'clear or obvious' error and that this error affected [the defendant's] substantial rights." *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014), quoting *Carines*, 460 Mich at 763-764. A defendant's rights are affected when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings." *Vandenberg*, 307 Mich App at 61. Even if a defendant satisfies this burden, this Court "will reverse only if the plain error led to the conviction of an innocent defendant or 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at 61-62, quoting *Carines*, 460 Mich at 763-764 (alteration in original).

### B. ANALYSIS

"The Confrontation Clause of the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .' " *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012), quoting US Const, Am VI. Additionally, the Michigan Constitution also affords a criminal defendant the right to be confronted with the witnesses against him. *Nunley*, 491 Mich at 697 (citations and quotation marks omitted); see also Const 1963, art 1, § 20. "A primary interest secured by the Confrontation Clause is the right of cross-examination." *People v Gaines*, 306 Mich App 289, 315; 856 NW2d 222 (2014). However, trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about . . . interrogation that is repetitive or only marginally relevant." *Id*. at 316 (citation and quotation marks omitted).

At trial, defendant cross-examined the complainant on the stand. In fact, the trial court afforded defendant ample time to question the complainant, and towards the end of his his cross-examination of the complainant, defendant said, "I don't have any further questions. I'd just like to reserve him for rebuttal." The trial court replied, "We're not going to do that. So, you ask whatever questions you have right now." Defendant then continued his examination and asked

the complainant to demonstrate how he was picked up, thrown against the wall, and hit his head. Furthermore, defendant asked the complainant whether there were any other instances of abuse before the incident at issue, and he continued to question the complainant regarding the events that night. Once defendant again reached the end of his cross-examination, he asked if he could take a break, but the trial court said, "We're not. We're going to finish this witness. So, if you have any other questions, now would be the time." Defendant replied, "I have about 50 other questions. You told me I can't ask him." The trial court then asked, "Do you have any relevant questions, Mr. Weimer?" Because I'd love to hear those." For a second time, defendant continued his examination and asked a few more questions before finally concluding the examination. The trial court then examined the complainant, and after the trial court's questioning, defendant again asked to reserve the complainant for his case in chief. The trial court said, "I'm not going to do that. That's denied."

Despite defendant's claim to the contrary, the complainant was available and defendant actually cross-examined the complainant at length. Given the trial court's obvious concern of requiring the eight-year-old complainant to get back on the stand, as well its wide discretion to limit evidence that is repetitive, the trial court did not err when it refused to allow defendant to recall the complainant. Defendant was not denied his constitutional right to confront the witnesses against him.

## III. RIGHT TO PRESENT A DEFENSE

Next, defendant argues that the trial court abused its discretion when it denied the admission of a Dragon Ball Z video and deprived defendant of his right to present a complete defense. We disagree.

## A. STANDARD OF REVIEW

"This Court reviews de novo both constitutional claims and preliminary questions of law regarding admissibility of evidence." *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). This Court reviews "the trial court's ultimate decision regarding admissibility of evidence for an abuse of discretion." *Id*., citing *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

## B. ANALYSIS

"A criminal defendant has a due process right to present a defense under the state and federal constitutions." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016), citing *People v Kurr*, 253 Mich App 317, 326; 654 NW2d 651 (2002). "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *People v Unger*, 278 Mich App 210, 249; 749 NW2d 272 (2008) (citation and quotation marks omitted). However, this right "extends only to relevant and admissible evidence." *Solloway*, 316 Mich App at 198 (citation and quotation marks omitted). "[D]efendant must still comply with established rules of procedure

and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. (internal quotation marks and citation omitted).

Defendant argues that the Dragon Ball Z video should have been admitted because it was relevant for purposes of (1) supporting defendant's theory of the case, and (2) discrediting much of the victim's testimony at trial. These arguments fail.

"Generally, all relevant evidence is admissible at trial, and [e]vidence which is not relevant is not admissible." *People v Bergman*, 312 Mich App 471, 483; 879 NW2d 278 (2015), citing MRE 402 (citation and quotation marks omitted). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401 (quotation marks omitted); see *Bergman*, 312 Mich App at 483. "Relevance involves two elements, materiality and probative value. Materiality refers to whether the fact was truly at issue." *Benton*, 294 Mich App at 199 (quotation marks and citation omitted). "Evidence is probative if it 'tends to make the existence of any fact that is of consequence of the determination of the action more probable or less probable than it would be without the evidence [.]' " *Bergman*, 312 Mich App at 483, quoting *People v Feezel*, 486 Mich 184, 197; 783 NW2d 67 (2010).

Defendant claims the video was relevant because, if played at trial, it would have revealed to the jury that the complainant was fabricating the incident. Specifically, it would have proven that the victim's description of the incident during the forensic interview with a detective and child protective services (CPS) worker was based off scenes from the video — not reality. For instance, in the forensic interview, the complainant explained that defendant gained super strength when the moon came out from behind the clouds that night. Additionally, the complainant said that defendant had "wild eyes" and was able to eat all of the food in the house until the refrigerator and cabinets were empty because defendant "got an extra part of his stomach." According to defendant, the complainant's descriptions were based off the video, and therefore, without the ability to show the video to the jury, defendant was denied his right to bring a complete defense.

While the Dragon Ball Z video very well could have shown that the complainant's unrealistic descriptions to the detective and CPS worker originated from his viewing the video, it was inconsequential to any material fact at issue. Whether the complainant was motivated by the video to believe that it was the moon that caused his father to abuse him does not change the pertinent fact at issue — that defendant threw the complainant into the wall, onto the bed, and onto the ground. Defendant, however, argues that the video is material because it is evidence of a fact at issue — whether defendant actually assaulted the complainant. Furthermore, defendant claims that the video is probative because it tends to make the existence of the assault less probable because the complainant may have been fabricating the whole incident. While there may be some merit to defendant's argument, the video itself is inconsequential. Whether the complainant was fabricating the incident based on the Dragon Ball Z video or a number of other cartoons is immaterial. Defendant introduced the forensic interview that included the complainant's discussion of the moon, along with his father's "wild eyes," insatiable appetite, and super strength. The source from where the complainant may have come up with those descriptions does not lend itself to whether the complainant was making up the assault. The

video, if admitted, would not have had any material or probative value, and it was irrelevant to the issues at trial.

Defendant also claims that the video would have further discredited the complainant's testimony. Evidence can be relevant if offered to address a complainant's truthfulness, *People v Mann*, 288 Mich App 114, 118; 792 NW2d 53 (2010), citing MRE 401, or a complainant's credibility, *People v Watkins*, 491 Mich 450, 492; 818 NW2d 296 (2012). However, the Dragon Ball Z video would not have been relevant toward addressing the complainant's credibility. As stated previously, aspects of the complainant's description of his father that night were clearly based in fantasy. No reasonable juror would believe that the moon caused defendant to have wild eyes, super strength, and an insatiable appetite, and therefore, the video was irrelevant towards further discrediting those aspects of the complainant's statements. Accordingly, the decision to exclude the video was not outside the range of reasonable and principled outcomes, and therefore, the trial court did not abuse its discretion when it denied defendant's request to admit the video.

Even if the movie had some relevance, the error was harmless. An error is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative. *People v Williams*, 483 Mich 226, 243; 769 NW2d 605 (2009). Had the movie been admitted, it would not change the fact that the vast majority of the complainant's testimony was grounded in reality. The complainant described the duplex defendant lived in, the bedroom where the incident occurred, the movie he was watching that night, the fact that defendant counted to three before shutting the television off, that defendant became angry when the complainant talked back to him, that defendant picked the complainant up and threw him three times, and, finally, that the complainant sustained a bruise on his eye, a cut to his lip, and a rug burn to the side of his face from defendant's actions. Those injuries were documented through photographs that were admitted at trial, and numerous witnesses testified to observing those injuries. Additionally, defendant's mother testified that defendant asked her not to take the complainant to school the next day, which led to an argument between defendant and his mother. Considering the other overwhelming evidence, defendant has not shown how the introduction of the Dragon Ball Z video would have at all changed the outcome of the case, and any error was harmless.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that he was denied the effective assistance of counsel for two reasons: (1) his standby counsel was ineffective at trial because he did not assist defendant as necessary, and (2) his counsel at the sentencing hearing was ineffective because he failed to review the presentence investigation report (PSIR) with defendant and read a false statement from the PSIR into the record. We disagree.

A. PRESERVATION AND STANDARD OF REVIEW

To preserve the issue of ineffective assistance of counsel for appeal, a defendant must bring a timely motion for a new trial or move for a *Ginther*[1] hearing in the lower court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Defendant did not file a motion for a new trial or for a *Ginther* hearing in the trial court, but he did file a motion to remand with this Court and requested an evidentiary hearing on the basis of ineffective assistance of trial counsel. This Court denied defendant's motion. *People v Weimer*, unpublished order of the Court of Appeals, entered April 7, 2016 (Docket No. 330100). Therefore, this issue is unpreserved.

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *Petri*, 279 Mich App at 410. Findings of fact are reviewed for clear error, but the ultimate constitutional issue is reviewed de novo. *Id*. Unpreserved claims of ineffective assistance of counsel may still be reviewed, but review is limited to mistakes apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

B. ANALYSIS

"To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003), citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Counsel's performance is deficient when it falls below an objective standard of reasonableness under prevailing professional norms. *Riley*, 468 Mich at 140. A defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012).

1. STANDBY COUNSEL

Defendant first argues that he was denied the effective assistance of counsel when his standby counsel, James P. Bartlett, failed to properly assist defendant at trial. This exact argument was addressed in *People v Kevorkian*, 248 Mich App 373, 422; 639 NW2d 291 (2001). In *Kevorkian*, the defendant claimed that his standby counsel "did *too little*" and "should have done *more* to help him." *Id*. at 424. This Court explained that "[a] defendant who asserts his right to self-representation has no absolute entitlement to standby counsel." *Id*. at 422 (citation omitted). Therefore, "[a]bsent a constitutional right to standby counsel, a defendant generally cannot prove standby counsel was ineffective." *Id*. at 425 (citation and quotation marks omitted). With that said, this Court cited approvingly to the following rationale:

As might be expected, a standby counsel's duties are considerably more limited than the obligations of retained or appointed counsel. . . . Although [the defendant's standby counsel's] role expanded as the case continued, he did not play the same role that defense counsel normally would in preparing the strategy

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-6-

for a criminal defense. Perhaps in a case where standby counsel held that title in name only and, in fact, acted as the defendant's lawyer throughout the proceedings, we would consider a claim of ineffective assistance of standby counsel. This is not such case. [*Id.*, quoting *United States v Schmidt*, 105 F3d 82, 90 (CA 2, 1997).]

Defendant's claim does not involve a situation where "standby counsel held that title in name only." Rather, Bartlett only aided defendant during trial by passing along notes when a possible objection could be made. Defendant conducted *voir dire*, cross-examined witnesses, called his own witnesses, raised objections, and conducted opening statement and closing argument. This is not a case where this Court would consider a claim of ineffective assistance of counsel because clearly Bartlett did not conduct himself as defendant's lawyer throughout the trial. Defendant was warned numerous times at the hearings before and during trial that self-representation was not in his best interest. However, defendant disregarded the trial court's warnings and now wishes to "use his waiver of trial counsel as both a sword and a shield in order to achieve the outcome he desires." *Kevorkian*, 248 Mich App at 419. A defendant who exercises the free choice to represent himself faces certain consequences and defendant cannot claim after the fact that he was denied the effective assistance of counsel.

Finally, even if defendant was afforded a right to the effective assistance of *standby* counsel, there was no evidence that Bartlett's conduct was deficient or affected the outcome of the trial. Bartlett aided defendant in his attempt to enter the Dragon Ball Z video during the pretrial hearing and also told defendant when to make a number of objections at trial. The record shows that Bartlett helped defendant, and even if more had been done, the outcome would not have been different.

## 2. SENTENCING HEARING

Defendant argues that he was denied the effective assistance of counsel at sentencing when Bartlett, having been assigned to fully represent defendant at the sentencing hearing, read a single statement into the record that came from defendant's PSIR. The PSIR indicated that "[t]he defendant stated that he was drinking again and lost his temper." At the sentencing hearing, Bartlett directed the trial court to the PSIR and told the court that "[d]efendant stated he was drinking again and lost his temper." According to defendant, he never told the probation officer that he was drinking and lost his temper, and Bartlett's failure to review the PSIR with defendant and decision to read the false statement into the record constituted deficient performance that affected the outcome of the proceeding. This argument is unavailing.

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Additionally, a defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). With that said, "trial counsel is responsible for preparing investigating, and presenting all substantial defenses," and "[a] substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation and quotation marks omitted).

At the sentencing hearing, Bartlett informed the trial court that, when considering the statement in the PSIR, it was apparent that defendant was not "misleading anybody" and that "[h]e certainly wants substance abuse counseling while in jail." In fact, Bartlett further explained that defendant asked Bartlett "to absolutely pound on to the [c]ourt that he was requesting that . . . ." Defendant then addressed the trial court and explained that he agreed alcoholics anonymous (AA) and mental health programs "would be both beneficial." Defendant now claims that Bartlett never discussed the PSIR with defendant, and had Bartlett done so, he would have learned that defendant never told the probation officer that he was drinking on the night of the incident. Defendant, however, has not overcome the strong presumption that Bartlett's decision to discuss the PSIR as he did was sound trial strategy. It was apparent from the transcript that Bartlett was attempting to show the trial court that defendant had owned up to his mistakes and was looking to correct them through substance abuse treatment. This was a sound strategy, and apparently one that defendant agreed with at the time given the fact that he told the trial court that AA would be beneficial.

To the extent that defendant claims Bartlett's performance was deficient because he did not review the PSIR with defendant, there is nothing to support this conclusion. Defendant did not raise his concern at the hearing, and Bartlett actually indicated that he did discuss his preparation for the sentencing with defendant. According to Bartlett, defendant wanted Bartlett to "pound on" the fact that defendant desired to obtain help with his problems with alcohol. Accordingly, defendant has not shown that trial counsel's performance was deficient. Nevertheless, even if Bartlett's performance was deficient, the record is devoid of any indication that the statement in the PSIR influenced the trial court's sentencing of defendant. The trial court concluded that based on defendant's six prior misdemeanors, including a number involving domestic violence, and considering the nature of the crime against the eight year old victim, "the best place for [defendant] should be prison." The fact that defendant may have been drinking seemed to have no bearing on the outcome of the sentencing hearing. Therefore, defendant has not shown that any error was outcome determinative, and he was not denied the effective assistance of counsel.

Affirmed.

/s/ Deborah A. Servitto
/s/ David H. Sawyer
/s/ Michael J. Riordan

-8-