*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TYWUANTE LESHAUN CRUMP,

Defendant-Appellant.

UNPUBLISHED
December 19, 2019

No. 343438
Wayne Circuit Court
LC No. 17-005080-01-FC

Before: RONAYNE KRAUSE, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his departure sentences of 10 to 15 years' imprisonment on jury convictions of reckless driving causing death, MCL 257.626(4), and failing to stop at the scene of an accident resulting in death, MCL 257.617(3). We affirm defendant's convictions, but remand to the trial court to either issue an order further articulating its reasons for the extent of the departure sentences or to resentence defendant.

## I. FACTUAL BACKGROUND

This case arises out of a car accident involving defendant and Tonya Billingsley. At the time of the accident, defendant worked at the Varsity Lounge in Detroit, Michigan. Billingsley had just left the Varsity Lounge when defendant announced over a microphone that people needed to move their vehicles. Sherry Thomas gave her keys to defendant to move her car. Defendant took Thomas's car keys, got inside her car, and drove away from the Varsity Lounge. One block from the Varsity Lounge, at the intersection of Stoepel Street and Dover Avenue, defendant crashed Thomas's vehicle into the side of Billingsley's vehicle, killing her. The speed limit on both streets was 25 miles per hour. Defendant drove northbound on Stoepel Street, traveling at 69 miles per hour at the time of impact. Billingsley drove westbound on Dover Avenue, traveling at 28 miles per hour at the time of impact. Despite the existence of a stop sign on Stoepel Street, defendant did not apply the brakes before impact. There was no stop sign on Dover Avenue. After the accident, defendant walked back to the Varsity Lounge, where he informed Thomas that somebody hit Thomas's vehicle. Despite the obvious seriousness of the

-1-

damage to Billingsley's vehicle, defendant did not alert police or emergency services about the accident, or try to help Billingsley, although he was friends with her.

At trial, the prosecution presented Officer John Velasco as a witness. On redirect examination, the following exchange occurred:

*Q.* Detective, is there any indication at all that Ms. Billingsley, the driver of the Grand Prix did anything wrong?

*A.* Other than not wearing her seatbelt and being a couple miles over the speed limit, I have no indication.

*Q.* Would the seatbelt have saved her in this case?

*A.* I don't think so.

At sentencing, the trial court noted that Billingsley was a 42-year-old mother of three children and defendant failed to render any assistance to her following this fatal accident; instead, he fled the scene. The court noted that the 21-year-old defendant had a criminal history that began at the age of 15 years old. And he had had the benefit of two diversion programs as a juvenile, as well as probation, and a wardship. In particular, the court noted, defendant was in juvenile court in 2010 and then had two more contacts with the juvenile court in 2011—both related to traffic incidents. In 2012, defendant again was charged with crimes involving a motor vehicle (including reckless driving and failure to stop after a collision), and pleaded to a reduced charge of operating without a license for which he was placed on probation and subjected to a wardship. The trial court also noted that, in 2012, defendant pleaded nolo contendere on an incorrigible charge and was, again, placed on probation. In 2013, defendant was again back in juvenile court on another charge for which he was placed on probation. Then, the court noted, defendant began his adult history with the criminal justice system, pleading on a charge of larceny less than $200. The court recognized that for years the court system had tried to provide help and services to rehabilitate defendant but such efforts had been unsuccessful. Further, the court noted, defendant had a pending probation violation in the 17th District Court, as well as a pending felony warrant for a drug offense in the 34th District Court—which was not considered when scoring the guidelines. And, the court noted, the facts that defendant had prior motor vehicle related offenses and the escalation in severity of defendant's offenses was not considered when scoring the guidelines. The court also noted that three children lost their mother, including a 15 year old child and a child who is significantly impaired with cerebral palsy; Billingsley provided their sole support. The sentencing guidelines range was 36 to 71 months, but the trial court sentenced defendant to concurrent terms of 10 to 15 years' imprisonment for each of defendant's convictions.

## II. DISPROPORTIONATE SENTENCE

Defendant argues that his sentences are an unreasonable and disproportionate upward departure from the recommended guidelines range. We disagree, in part.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). This Court reviews for an abuse of discretion whether a sentence is reasonable. *People*

*v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) (*Steanhouse II*). A sentence is reasonable if it adheres to the principle of proportionality, which "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Walden*, 319 Mich App 344, 351-352; 901 NW2d 142 (2017) (quotation marks and citation omitted). Courts may consider various factors under the proportionality standard, including:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Id*. at 352-353 (quotation marks and citation omitted).]

While a trial court must score and consider the sentencing guidelines, the minimum sentencing guidelines range is advisory only. *Lockridge*, 498 Mich at 392. However, the trial court must articulate reasons supporting its decision to impose a sentence outside the guidelines range in order to facilitate appellate review. *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citation omitted).

In this case, the trial court imposed sentences that upwardly departed from the minimum sentencing guidelines range of 36 to 71 months' imprisonment by sentencing defendant to 10 to 15 years' imprisonment. But it is clear from the record that, in imposing sentence, the trial court considered numerous factors, including defendant's extensive criminal history. The trial court could not properly consider defendant's criminal history alone as a basis to upwardly depart from the guidelines because defendant's criminal history was already factored into the guidelines by prior record variable (PRV) 4, MCL 777.54 (low severity juvenile adjudications), PRV 5, MCL 777.55 (prior misdemeanor juvenile adjudications), and PRV 6, MCL 777.56 (relationship to criminal justice system). But, in context, it is clear that the trial court did not consider defendant's criminal history in and of itself. Instead, the trial court referred to defendant's criminal history to highlight the extensive help and services—and numerous chances—that were given to defendant to rehabilitate and change the direction of his life. A low potential for rehabilitation is an appropriate factor for a trial court to consider because the potential for rehabilitation is not reflected in the guidelines. *Dixon-Bey*, 321 Mich App at 525 n 9. Thus, it was proper for the trial court to consider defendant's criminal history and the implication that defendant had a low potential for rehabilitation in imposing an upward departure sentence.

Defendant also argues that the trial court improperly considered the escalation of defendant's criminal history. However, the trial court properly considered the escalating severity of defendant's criminal history as a factor not considered by the guidelines. *Id*. at 525. Despite defendant's young age and the associated lesser culpability of juveniles, *People v Skinner*, 502 Mich 89, 105-106; 917 NW2d 292 (2018), defendant's criminal history evidenced an escalation in the severity of crimes that defendant committed. Moreover, the trial court noted that three of defendant's prior criminal acts involved vehicles. These were appropriate circumstances for the trial court to consider. See *Walden*, 319 Mich App at 351.

The trial court also considered the impact that Billingsley's death had on her family, noting that three children lost their mother, including a 15 year old child and a child who is significantly impaired with cerebral palsy. Defendant argues that the trial court erred in considering the impact of Billingsley's death on her family because this factor is already considered in offense variable (OV) 5, MCL 777.35, which "is scored when a homicide or homicide-related crime causes psychological injury to a member of a victim's family." *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017) (footnote omitted). But, as the prosecution argues, OV 5 did not adequately account for the family's nonpsychological injuries, including the loss of a caregiver and financial provider, to say the least. See *Dixon-Bey*, 321 Mich App at 527. Therefore, the impact of Billingsley's death on her family was properly considered by the trial court.

Defendant asserts that the trial court erred when it considered that defendant left the scene of the accident without rendering assistance. But it is clear that the trial court did not believe such fact was adequately considered in light of the circumstances in this case. During the sentencing hearing defendant admitted that he "knew Ms. Billingsley personally" and that she was "a good friend" which means that, despite the obvious severity of this tragic collision—defendant essentially T-boned Billingsley's vehicle while driving 69 mph—he fled the scene and never called for assistance; instead, he left his "good friend" trapped in her vehicle to die. The trial court's consideration of this factor was proper.

Defendant next argues that the extent of the upward departure was disproportionate. After determining that reasons exist to depart from the minimum sentencing guidelines range, a trial court must next consider the extent of the departure. *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017) (*Steanhouse III*), vacated in part on other grounds by *People v Steanhouse*, ___ Mich ___; 933 NW2d 276 (2019) (Docket No. 156900). "Therefore, even in cases in which reasons exist to justify a departure sentence, the trial court's articulation of the reasons for imposing a departure sentence must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*.

Here, the trial court noted that defendant's minimum sentencing guidelines range was 26 to 71 months. The trial court then articulated its reasons for imposing a departure sentence and sentenced defendant to 10 to 15 years' imprisonment for each conviction. Absent from the trial court's statements was an explanation of how the extent of the departure was proportionate to defendant and the circumstances concerning the offenses. *Steanhouse III*, 322 Mich App at 242. It was unreasonable for the trial court to fail to explain why an upward departure of 49 months was proportionate. Therefore, we remand for the trial court to either issue an order further articulating its reasons for the *extent* of the departure sentences or to resentence defendant. See *Steanhouse*, ___ Mich at ___ ; slip op at 1.

Defendant also argues that the prosecution engaged in misconduct during sentencing. We disagree.

To preserve a claim of prosecutorial misconduct, a defendant must timely and specifically object, "except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Callon*, 256 Mich App 312,

329; 662 NW2d 501 (2003). A defendant must also request a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not object to the prosecution's allegedly improper remarks at sentencing, nor did defendant request a curative instruction. Therefore, this issue is unpreserved.

A claim of prosecutorial misconduct is reviewed de novo to determine if a defendant was denied a fair and impartial trial. *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004). However, when a claim of prosecutorial misconduct is unpreserved, "appellate review is for outcome-determinative, plain error." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Reversal is only warranted if the plain error leads to "the conviction of an actually innocent defendant," or where an error affects the "fairness, integrity, or public reputation" of the judicial proceedings. *Id*. at 763-764.

Defendant implies that the prosecution engaged in misconduct at sentencing by improperly arguing that the trial court should "throw out" the minimum sentencing guidelines range, and without supporting evidence, asserted that defendant had likely consumed alcohol on the night of the accident. As an initial matter, we note that defendant did not provide any citation of supporting authority for the assertion that the prosecution engaged in misconduct, and therefore, defendant abandoned this issue. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). In any case, this claim is without merit.

Issues of prosecutorial misconduct are decided on a case-by-case basis, with the prosecutor's remarks reviewed in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). The prosecutor's argument that the trial court should disregard the minimum sentencing guidelines range was the prosecutor's way of requesting that the trial court sentence defendant to the maximum time allowed. The prosecution argued, based on the facts of the case, that the maximum allowable sentence was appropriate. "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). The prosecutor's statement that he was "willing to be damn near everything that I have [that defendant] was drinking that night," was not supported by the evidence because there was no evidence introduced at trial regarding whether defendant had been drinking the night of the accident. However, the prosecutor's assertion was not a statement of fact, but was instead an expression of the prosecutor's personal belief. See *Unger*, 278 Mich App at 241. Even if the prosecutor's two remarks did constitute misconduct, defendant failed to establish how he was prejudiced by the remarks. See *Carines*, 460 Mich at 763. Thus, defendant's argument fails.

### III. LAY OPINION TESTIMONY

Defendant argues that Officer Velasco's statement that a seatbelt would not have saved Billingsley's life was improper lay opinion testimony, and that defense counsel was ineffective for failing to object to such testimony. We agree that Officer Velasco gave improper lay opinion testimony, but disagree that defense counsel was ineffective for failing to object.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant did not object to Officer Velasco's testimony that is at issue in this appeal. Therefore, this issue is unpreserved and our review is for plain error affecting his substantial rights. *People v Perry*, 317 Mich App 589, 600; 895 NW2d 216 (2016).

To properly preserve an ineffective assistance of counsel claim, a defendant must move for a new trial or a *Ginther*[1] hearing in the trial court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Defendant did not move for a new trial or a *Ginther* hearing in the trial court. Therefore, this issue is unpreserved and our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

Generally, relevant evidence is admissible, except as provided by the federal and state constitutions or other rules. *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008). MRE 701 governs the admission of lay opinion testimony, and provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Additionally, lay opinion testimony is "based on common sense," and does not "involve highly specialized knowledge." *People v McLaughlin*, 258 Mich App 635, 658; 672 NW2d 860 (2003).

Defendant argues that Officer Velasco's testimony was outside the bounds of permissible lay opinion testimony in MRE 701. Specifically, defendant asserts that Officer Velasco's reply, that he did not think that a seatbelt would have saved Billingsley's life, was not a rational perception of the evidence because Officer Velasco used the interpretation of crash data, together with his training as an accident reconstructionist, to opine on fault and causation.

Officer Velasco testified predominately about the relative speeds of Billingsley and defendant before and at the time of impact, whether either person applied the brakes before impact, and whether either wore a seatbelt. This testimony was on the basis of Officer Velasco's perceptions because the information was available to Officer Velasco through the transfer crash data retrieval systems in both vehicles. Officer Velasco also visited the scene of the accident, where he took measurements to map the scene. Officer Velasco's testimony that he did not believe that a seatbelt would have saved Billingsley's life was related to his perceptions of the scene of the accident and the data from the vehicles. However, the trial court ultimately decided that the issue of Billingsley's failure to wear a seatbelt was not relevant to an issue in the case:

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[T]he evidence of the decedent's failure to use a seatbelt would only be relevant where the Defendant could show that the failure was the sole cause of harm to the decedent.

Additionally, there is evidence that has been presented in this case that one could conclude that [defendant's] conduct was the substantial factor in the decedent's death in this matter.

The Court is concerned, of course, with balancing the relevance of this and the danger of confusing the issues or misleading the jury and the Court is agreeing with the Prosecution that the issue of the seatbelt and the evidence before this Court that the absence of the seatbelt was not a factor in her death, and the Court is barring argument on the subject.

The trial court acknowledged that Officer Velasco's testimony was not helpful to the jury's determination of a fact in issue. Thus, Officer Velasco's testimony was not admissible lay opinion testimony under MRE 701.

However, considering that this issue is unpreserved, the trial court's admission of the improper lay opinion testimony did not prejudice defendant. There was ample evidence for the jury to convict defendant of reckless driving causing death without Officer Velasco's statement. Corporal David Fitzpatrick of the Detroit Police Department described Billingsley's vehicle as "crumpled," and noted that the fire department had to "cut out" the windshield to extract Billingsley from the vehicle. Officer Velasco testified that at the time of impact, Billingsley was traveling at 28 miles per hour and defendant was traveling at 69 miles per hour. There was testimony that Stoepel Street, the street that defendant drove on, had a stop sign at the intersection of the accident, yet defendant did not apply the brakes before the accident. Additionally, defendant's DNA was found on the airbag of Thomas's vehicle. Accordingly, Officer Velasco's testimony regarding Billingsley's failure to wear a seatbelt did not affect defendant's substantial rights because there was sufficient evidence for the jury to determine that defendant was guilty of the charged offenses and the error did not affect the "fairness, integrity, or public reputation" of the judicial proceedings. *Carines*, 460 Mich at 763-764. Thus, defendant's argument fails.

Relatedly, defendant argues that defense counsel provided ineffective assistance of counsel by failing to object to Officer Velasco's lay opinion testimony. To establish an ineffective assistance claim, a defendant must show that trial counsel's performance was objectively deficient, and that such deficiencies prejudiced him. *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Although it was error for the trial court to admit Officer Velasco's lay opinion testimony, defendant was not prejudiced by the admission because there was sufficient evidence for the jury to convict defendant. Therefore, there is not a reasonable probability that, had defense counsel objected to Officer Velasco's testimony, the trial would have resulted in an acquittal. Accordingly, defendant failed to establish that defense counsel provided ineffective assistance of counsel.

Affirmed, but remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro