*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEAN ROBERT KIMMES,

        Defendant-Appellant.

UNPUBLISHED
September 17, 2020

No. 347928
Marquette Circuit Court
LC No. 18-056651-FH

Before: REDFORD, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Dean Robert Kimmes, appeals by right his jury-trial conviction of aggravated stalking, MCL 750.411i. The trial court sentenced him to 180 days in jail, with credit for 38 days served and 90 days deferred, and to five years' probation. Defendant contends on appeal that he received ineffective assistance of counsel, that certain acts and statements by the prosecutor denied him a fair trial, and that the prosecutor did not present sufficient evidence to support the conviction. We affirm.

## I. RELEVANT FACTS

Defendant and the complainant, FS, were married from 1993 until FS filed for divorce in 2007. The marriage produced three children; at the time of defendant's trial, they ranged in age from 15 to 20 years old. FS testified at trial that defendant's escalating harassment after the divorce led her to obtain personal protection orders (PPOs) against him in 2009, 2014, 2016, and 2017. According to FS, between 2008 and 2017, defendant would frequently sit in front of her house or in her driveway when it was not his scheduled parenting time, call her incessantly, leave her vulgar messages, show up at her place of work, and scream at her in front of their children. FS testified that defendant would continue these behaviors after she specifically and repeatedly asked him to stop, and that she felt terrorized, frightened, and harassed. She said that defendant complied with the PPOs, but his behavior would escalate as soon as they expired.

Among the numerous examples of defendant's conduct FS described, she recalled an incident that occurred in the summer of 2012, when she and the children were at her friend

-1-

Connie's house for a cookout. FS was grilling and the children were playing when defendant showed up uninvited and started screaming at her and walking toward her; the children ran inside. Both she and Connie urged defendant to leave. When he finally got back into his truck to leave, he then "drove back and forth probably four times or so," then parked across the street and stared at them for 20 to 30 minutes, calling FS continuously: every time his call went to voicemail, he would hang up and dial again. FS also recalled a 2014 incident, when defendant pulled into her driveway as she was attempting to back out with their daughters in the backseat. Defendant got out of his vehicle and approached her, screaming at her and calling her vulgar names. The incident that was the catalyst for the present case occurred in November 2017, after a hearing in front of a referee on defendant's motion to hold FS in contempt because their youngest daughter refused to follow the parenting time schedule and visit defendant. FS testified that at the end of the hearing, defendant was agitated and yelling at her, and, as per usual, the bailiff held defendant back for a few minutes so FS could get to her car and leave. She said that as she drove down the highway, defendant caught up to her in his car and cut in front of her so closely that she had to take measures to avoid losing control of her car on the slushy road.

The testimony of the former couple's two daughters largely corroborated that of FS, while the testimony of their son, TK, was more favorable to defendant. TK did not remember several of the incidents FS had described, and with regard to those he did remember, he said defendant's behavior never made him feel harassed or threatened.

Defendant testified that the PPOs were based on fabrications concocted by FS to take revenge on him for finding out about her secret debt during the divorce.[1] He testified that he always complied with the PPOs, had an "excellent" relationship with his children, never used vulgarities, and was physically unable to raise his voice because of an injury. He admitted to driving slowly through FS's neighborhood, but said he did so due to a back injury. He admitted calling FS's home multiple times, but explained that it was to get in touch with the children. He testified that he went to Connie's house during a cookout, but said it was to lecture his son about skipping soccer practice, and he insisted that he did not approach the girls or FS and was not hostile. Defendant maintained that he only drove into FS's driveway to pick up the children, that there was no other reason for him to be there, and that when he allegedly blocked the driveway, he was merely waiting outside to pick up the children for parenting time. He denied attempting to run FS off the road after the November 2017 hearing and testified that he had taken a different route home after the hearing.

After a three-day trial, the jury deliberated for less than an hour and a half before returning a guilty verdict.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

---

[1] Defendant testified that he discovered FS had $12,800 in credit card debt, when he did not even know that she had a credit card.

Defendant first argues that his trial counsel rendered constitutionally ineffective assistance at voir dire and by failing to move for a mistrial after it was discovered that the prosecutor had committed a discovery violation. Because defendant has failed to establish that trial counsel performed deficiently and that counsel's deficient performance prejudiced him, we disagree.

Ineffective-assistance claims are mixed questions of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Generally, we review a trial court's findings of fact for clear error and review questions of law de novo. *Id*. However, because defendant did not move in the trial court for a new trial or an evidentiary hearing, this issue is unpreserved. *People v Sabin*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Our review of unpreserved claims of ineffective assistance is limited to errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To prevail on his claim of ineffective assistance of counsel, defendant must prove the following:

> First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable. [*People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011), citing *Strickland*, 466 US 687-688, 694-696; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Rice (On Remand)*, 235 Mich App 429, 44; 597 NW2d 846 (1999).]

"We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *People v Unger,* 278 Mich App 210, 242-43; 749 NW2d 272 (2008). That a strategy does not work does not necessarily amount to ineffective assistance. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Failing to advance a meritless argument also does not constitute ineffective assistance. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### 1. VOIR DIRE

Defendant first contends that his trial counsel rendered ineffective assistance by failing to properly question three potentially biased, prospective jurors and by failing to exercise peremptory challenges with respect to these jurors. We find no deficient performance.

The purpose of voir dire is to ensure that a criminal defendant receives a fair and impartial trial by eliciting sufficient information from potential jurors to enable counsel to determine who should be disqualified from service on the ground that he or she would be unable to render an impartial decision. See *People v Sawyer*, 215 Mich App 183, 187; 545 NW2d 6 (1996). We generally refrain from second-guessing defense counsel's judgment in selecting jury members and have been "disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror" because we know that counsel can assess aspects of prospective jurors that this Court cannot review, such as their "facial expressions, body language, and manner of answering questions." *Unger*, 278 Mich App at 258.

Defendant identifies three jurors from whom he claims defense counsel should have elicited additional information, and whom counsel should have peremptorily struck from the jury. During her voir dire, the prosecutor asked if any of the potential jurors had experience with stalking behaviors or PPOs. One juror stated that she had obtained a PPO against her ex-husband and that it made her feel safe, another stated that she had experienced stalking more than 20 years earlier when someone gave her unwanted gifts and waited for her at work, and a third juror stated that his daughter had been through a heated divorce involving custody issues. Two of these jurors expressly agreed that they could be impartial, and when the prosecutor asked if anyone felt that they could not serve on the jury, no one responded. Defense counsel asked the first potential juror if the PPO against her ex-husband was for conduct involving violence, and she responded that it was not; counsel asked no questions of the other two potential jurors and he used his five peremptory strikes to remove potential jurors other than these.[2] Defendant asserts that failing to ask follow-up questions of one potential juror and any questions at all of the other two, and to peremptorily strike all three from the jury, cannot constitute reasonable trial strategy.

We reject defendant's assertion that his trial counsel's voir dire performance could not constitute reasonable trial strategy. Counsel might reasonably have thought that defendant would benefit from having on the jury a person who felt safe with the PPO she obtained against her ex-husband, another who experienced unwanted contact that resolved without her obtaining a PPO, and a third who knew how contentious custody issues could become. It is not unreasonable to think that these jurors might be sympathetic to defendant's insistence that he complied with the PPOs, that the complainant's allegations of unwanted contact were untrue or overblown, and that all defendant was trying to do was exercise his parenting time after a rancorous divorce had left the complainant seeking revenge. Using peremptory strikes to exclude these jurors would not have advanced defendant's strategy. That a strategy does not work does not necessarily amount to ineffective assistance. *Petri*, 279 Mich App at 412.

Because defendant has not overcome the presumption that trial counsel's voir dire performance was reasonable trial strategy, he has failed to meet his burden to establish that counsel's performance "fell below an objective standard of reasonableness." See *Armstrong*, 490 Mich at 289. And even if we were inclined to conclude that counsel's performance was deficient, defendant's claim of ineffective assistance would still fail because he makes no effort to explain how, "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 289-290. Without establishing both the performance and the prejudice prong, defendant's ineffective assistance of counsel claim necessarily fails. *Id*.

---

[2] Counsel used all of his peremptory strikes to remove the following: a person whose friend had relatively recently obtained a PPO against her boyfriend because of his threatening and harassing behavior but still felt unsafe; a person who had been in law enforcement and said that not everyone would abide by a PPO; a person who expressed the same sentiment and also indicated that it was more likely that someone had violated a PPO if there were multiple allegations of violation; a person who was acquainted with one of the officers being called as a witness, and; a person who had done some legal work interpreting medical files.

## 2. MISTRIAL

Defendant next argues that his trial counsel was ineffective because he did not request a mistrial after it became apparent that the prosecutor had not disclosed certain police reports that she had acquired shortly before trial. We disagree.

The discovery violation at issue came to light during the prosecutor's redirect examination of FS. The prosecutor asked FS if she had contacted the police about defendant on June 11, 2009. FS said she needed something to refresh her memory, and the prosecutor attempted to show her a document. However, when the prosecutor showed the document to defense counsel, he immediately requested a sidebar. After a lengthy sidebar, the prosecution pursued a different line of questioning. During the morning recess, and outside the presence of the jury, the court placed on the record that the prosecutor had tried to show FS a police report that the prosecution had not provided to defendant. The court briefly summarized the sidebar and noted that MCR 6.201(B)(1) requires the prosecutor to produce any police reports concerning the case. After further discussion, the court ordered the parties to provide to one another all of the police reports in their possession.

After what turned out to be an extended break, the court went back on the record to explain that the parties had exchanged materials and a conference had been held in chambers. Summarizing the conference, the court noted that the prosecutor said she had requested a number of police reports in response to receiving defendant's witness list, which contained the names of a number of law enforcement officers. She had received the reports four days before the start of trial and had not provided them to defendant because prior discussions with defense counsel led her to believe that he already had them. To give the parties time to review the reports, determine the extent to which they were directly relevant to the case, and consider what, if any, remedy might be appropriate, the court indicated that the trial would resume with testimony from witnesses for whom the discovery issue was not relevant. The jury returned, and the prosecution continued by calling a new witness.

During the noon recess, the attorneys reviewed the materials exchanged earlier and met for another conference in chambers. After reconvening, the court placed a summary of the conference on the record. The court noted that there were approximately 10 police reports that the prosecutor had received the Friday before Tuesday's start of trial but had failed to provide to defendant, and one report that defendant had obtained but had failed to provide to the prosecution, and that half of the reports pertained to the allegations in the present case. The court recalled that, earlier in the proceedings, the prosecution had represented that the case would revolve around the allegations in the PPOs. The court then stated that it had reviewed the PPO files and had concluded that the case presented on FS's direct testimony was in fact based on the PPOs. In response to the trial court's invitation to address the issue of remedy, the prosecution asked to use the police reports for impeachment purposes, and defense counsel indicated that he would ask the court to limit the prosecution's case to the allegations in the PPOs and allow him to recall witnesses should further review of the exchanged materials make it necessary. The court then ruled in relevant part:

> The Court is satisfied that when the People received the report [sic] they were required to turn them over, so it is the fault of the prosecutor that [sic, but?] the Court would also find that it was not deliberate. The number of days at issue in

terms of non- -- not providing the report is approximately five days, does not appear, at least at this stage, that there's anything particularly prejudicial provided that, again, the People's case is based on what was originally outlined as contained within the PPO petitions and then the police report of November [2017]. The Court would find at this point that it essentially had been, and so there's not really an issue in that regard. The Court would certainly, given the fact that we're mid-trial and this has been provided within the last couple of hours, provide any opportunity for recalling witnesses to the extent necessary to address anything in the reports that, you know, could not have been covered during the testimony previously, and if there is any such request we can certainly address that as the case continues.

Neither attorney added anything else to the record with regard to the issue. The jury returned and the trial continued. Defense counsel did not recall any witnesses and there is no indication that the prosecutor used the police reports at issue for impeachment.

We conclude that defense counsel was not ineffective for failing to move for a mistrial based on the prosecution's discovery violation. "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citation omitted). As indicated above, the trial court found that the prosecution committed a discovery violation by failing to turn over certain police reports. However, the court concluded that defendant was not prejudiced by the violation because the prosecution had based the presentation of its case on the allegations in the PPOs and the police report from November 2017. Defendant does not challenge this ruling on appeal by pointing to any material information in the reports that would have assisted his defense, nor does he offer any other argumentation regarding how trial counsel's failure to request a mistrial on the basis of the discovery violation prejudiced him. In the absence of prejudice, a motion for a mistrial would have been meritless, and failing to advance a meritless argument does not constitute ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201.

Defendant having again failed to meet his burden to establish both prongs of the test for ineffective assistance of counsel, his claim must fail. See *Armstrong*, 490 Mich 289-290.

## B. PROSECUTORIAL MISCONDUCT[3]

Defendant next alleges prosecutorial misconduct arising from the prosecutor's discovery violation and statements she made during her closing argument. After reviewing the record, we find no prosecutorial misconduct.

---

[3] Defendant uses the term "prosecutorial error." This Court has distinguished "prosecutorial misconduct" from "prosecutorial error" by defining the latter to occur "when a when a prosecutor makes a technical or inadvertent error at trial[,]" and reserving the former for those extreme instances "where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct." *People v Cooper*, 309 Mich App 74 87-88; 867 NW2d 452 (2015). However, as

To preserve a claim of error involving prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction. *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015). This Court reviews a claim of prosecutorial misconduct de novo to determine whether the identified conduct deprived the defendant of a fair trial. See *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013); see also *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995) (stating that the test is whether the improper remarks deprived the defendant of a fair trial). Defendant objected to the prosecution's discovery violation and to statements the prosecutor made about TK during her closing argument. Therefore, these issues are preserved for appellate review. Defendant's remaining allegations of prosecutorial misconduct are not preserved.[4] For unpreserved claims of prosecutorial misconduct, this Court examines whether the claimed error amounted to plain error that affected the defendant's substantial rights. See *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013).

Claims that a prosecutor's remarks prejudiced a defendant's trial are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's conduct in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). "The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). "Prosecutorial comments must be read as a whole and evaluated in the light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Brown*, 279 Mich App 116, 135-136; 755 NW2d 664 (2008).

Turning first to the claim of prosecutorial misconduct based on the previously discussed discovery violation, we agree with the trial court that the prosecutor committed a discovery violation by failing to disclose the police reports during discovery. See *People v Dickinson,* 321 Mich App 1, 19; 909 NW2d 24 (2017) (noting that even where a prosecutor lacks knowledge of a police report, the failure to discover and disclose it likely constitutes a discovery violation). However, as already indicated, defendant has not challenged the trial court's conclusion that the violation was accidental, or pointed to anything in the records that prejudiced his defense or in any other way denied him a fair trial. Absent any record evidence that the prosecutor's discovery

---

the Court pointed out, "prosecutorial misconduct" has become a term of art in criminal appeals, *id*., at 87, and "[n]o matter what operative phrase is used, we must look to see whether the prosecutor committed errors during the course of trial that deprived defendant of a fair and impartial trial, *id*., at 88. Without meaning to imply that the present prosecutor is suspected of acting unethically or illegally, we will use the term "prosecutorial misconduct."

[4] Defendant proposes that where trial counsel objected to one instance of prosecutorial misconduct, this Court should review de novo all instances of alleged prosecutorial misconduct. We decline to do so, as this approach would undermine the preservation requirement's purpose to induce litigants to do what they can in the trial court to prevent error, eliminate prejudice, and to create a record. See *Local Emergency Fin Assistance Loan Bd v Blackwell*, 299 Mich App 727, 737; 832 NW2d 401 (2013), citing *People v Mayfield*, 221 Mich App 656, 660; 562 NW2d 272 (1997).

violation at issue denied defendant a fair trial, we conclude that defendant is not entitled to relief. See *Dunigan*, 299 Mich App at 588.

We also conclude that defendant is not entitled to relief based on his allegations that the prosecution made inflammatory or otherwise improper statements during closing argument. "The purpose of closing argument is to allow attorneys to comment on the evidence and to argue their theories of the law to the jury." *People v Finley*, 161 Mich App 1, 9; 410 NW2d 282 (1987). A prosecutor may not argue facts that were unsupported by the evidence, but the prosecutor may argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case. *Haywood*, 209 Mich App at 236. Moreover, a prosecutor need not use the least prejudicial evidence available to establish a fact at issue, nor must he or she state the inferences in the blandest possible terms. See *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995), cert den 522 US 872 (1997); *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).

Defendant first contends that the prosecutor improperly commented on JK's credibility by saying in his closing argument that she "came across as a very articulate and mature 15-year-old to me." We conclude that the prosecutor's comment was not improper.

A prosecutor may not vouch for the credibility of her witnesses "to the effect that [s]he has some special knowledge concerning a witness' truthfulness." *Bahoda*, 448 Mich at 276. However, she may "comment on [her] own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Defendant expressly called JK's credibility into question when he testified that she was "coached" by FS and that she was taking medication, a side-effect of which was "delusions of the facts." Given that defendant's comments constituted conflicting evidence about JK's credibility, and the importance of credibility in this case,[5] it was not improper for the prosecutor to comment on JK's credibility. See *id*. Furthermore, almost immediately after the challenged statement, the prosecutor reminded the jury that "judging her credibility is up to you," arguably dispelling any notion that she had special knowledge of the witness's truthfulness that was unavailable to the jury. See *Bahoda*, 448 Mich at 276. Thus, we find no plain error.

Defendant next implies that the prosecutor impermissibly denigrated defendant by calling into question his motive for asking the court to send JK out of the courtroom while he testified. We again disagree.

At one point during his testimony, defendant requested that JK be allowed to leave the courtroom, stating: "One—one thing I re—request since I love my children I'd—I would like to protect 'em, if [JK] can go home now?" The court instructed defendant to answer the questions as best he could. Soon thereafter, defendant testified that JK was lying and delusional, and had been coached. During closing argument, the prosecutor called into question defendant's stated motive, i.e., to protect his children out of love, by noting that he had not asked the court to allow his son,

---

[5] In his opening statement, defense counsel stressed the absence of physical evidence corroborating the complainant's allegations against defendant.

TK, to leave the courtroom. After reminding the jury that defendant had implied that JK and her sister were lying when their testimony corroborated FS's, the prosecutor then said, "This is why he wanted her to leave the courtroom. Because he needed to call her a liar." Defendant alleges that the prosecution's speculation about the motive for his request constituted prosecutorial misconduct and "certainly had an effect on the jury."

A prosecutor "must refrain from denigrating a defendant with intemperate and prejudicial remarks." *Bahoda*, 448 Mich at 282-283. However, "a prosecutor is free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). In this instance, the prosecutor's speculation that defendant wanted JK, but not TK, to leave the courtroom because he wanted to attack JK's credibility was a reasonable inference from the course defendant's testimony took and it was related to the prosecution's theory of the case, which was that defendant had long been "manipulating the system," that is, camouflaging unacceptable behavior with acceptable justifications. Because the prosecutor's comment about defendant's motive for asking the court to allow JK to leave the courtroom was grounded in the evidence and reasonable inferences therefrom, we detect no plain error.

Defendant next argues that the prosecutor erred by stating that TK was there to testify against his will and by suggesting that defendant maliciously subpoenaed him. As indicated, this issue is preserved, so our review is de novo to determine whether the identified conduct deprived defendant of a fair trial. *Bahoda*, 448 Mich at 266-267. It did not.

The prosecutor's observation that TK was testifying against his will was a simple repetition of the evidence. TK testified at trial that he did not have any reason to testify against his parents, that he thought "this [was] something they need to figure out on their own," and that he was testifying "against [his] will." Asked what he meant by "against [his] will, TK replied, "I wouldn't be here if I—I wasn't asked to be here, or subpoenaed to be here." Accurately relaying a witness's testimony does not constitute prosecutorial misconduct. See *Seals*, 285 Mich App at 22; *Unger*, 278 Mich App at 236.

Regarding whether the prosecutor suggested that defendant maliciously subpoenaed TK, we think defendant misconstrues the prosecutor's argument. The prosecution was not calling into question defendant's exercise of his constitutional right to present a defense and call witnesses. See US Const, Am VI; Const 1963, art 1, § 20; *People v Steele*, 283 Mich App 472, 488; 769 NW2d 256 (2009). Rather, read in context, *Mann*, 288 Mich App at 119, we believe that the prosecutor was attempting to point out the incongruity between defendant's request to allow JK to leave the courtroom because he loved and wanted to protect his children, and the fact that he had not asked that TK be allowed to leave the courtroom and had compelled him to testify.[6] Viewing the prosecutor's comments in their totality makes clear that the point of the comparison was not to denigrate defendant's exercise of his constitutional rights, but to illustrate the prosecution's theory that defendant consistently and intentionally sought to shield reprehensible conduct with creditable explanations. To the extent that the prosecutor's comments arose from TK's testimony and

---

[6] TK had already testified when defendant asked that JK be allowed to leave the courtroom.

reasonable inferences therefrom and related to the prosecution's theory of the case, we find no prosecutorial misconduct.

Next defendant contends that the prosecutor erred by referring to conduct alleged to have occurred over a 10-year period, when the statute of limitations for the charged crime is six years. Defendant argues that this improperly encouraged the jury to consider uncharged acts as evidence of defendant's guilt.

Prior to closing arguments, the parties agreed that the statute of limitations for the charged crime was 6 years. Accordingly, when determining whether defendant committed the charged crime, the jury could consider only that conduct that occurred from 2011 onward. In their closing arguments, both attorneys addressed the 10-year timeframe in support of their respective theories. In her closing argument, the prosecutor referred generally to the 10-year period during which FS had suffered defendant's threats and intimidation to support her argument that this was not a case about parenting time, it was a case about defendant's hostility toward FS. In his closing argument, defense counsel referred to the 10-year period to argue that, after 10 years of allegations, one might expect some corroborating physical evidence, such as e-mails, text messages, video, photographs, but FS had presented none. This supported the defense theory that she had fabricated allegations against defendant out of revenge. A "[d]efendant may not assign error on appeal to something that his own counsel deemed proper at trial." *People v Barclay*, 208 Mich App 670, 673; 528 NW2d 842 (1995). Further, defendant cannot show that he was prejudiced by the prosecutor's references to events that may have occurred outside the statute of limitations period. The trial court instructed the jurors not to consider events that occurred before 2011, and "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Again, we find no plain error.

Finally, defendant argues that the prosecutor erred by improperly commenting on the weight of the PPOs FS obtained. We review this unpreserved issue for plain error affecting defendant's substantial rights. See *Gibbs*, 299 Mich App at 482.

As previously discussed, prosecutors are generally "free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *Seals*, 285 Mich App at 22. In this case, PPOs were admitted as evidence and the prosecutor outlined that they were granted after hearings. This was a recitation of facts, not the prosecutor's attempt to vouch for the credibility of the underlying allegations. Further, the trial court specifically instructed the jury that the fact that the PPOs were granted was not evidence that defendant had committed stalking, and that it was their role to determine the weight of the evidence presented. "Jurors are presumed to follow their instructions." Arguing that the PPOs would not have been granted over mere custody disputes was also directly responsive to defendant's theory of the case that FS had fabricated the allegations against him and that his actions were attempts to exercise his parenting time. The prosecutor's argument may have challenged his defense, but it did not undermine his ability to present it. When a defendant advances a theory, it is proper for the prosecutor to respond to the argument, argue the inferences flowing from that theory, and address the weaknesses of the defendant's theory of defense. *People v Fyda*, 288 Mich App 446, 462; 793 NW2d 712, 722 (2010). This is exactly what the prosecutor did. Accordingly, we find no plain error affecting defendant's substantive rights.

## C. SUFFICIENCY OF THE EVIDENCE

Lastly, defendant argues that the prosecution presented insufficient evidence at trial to support his conviction of aggravated stalking. We review de novo challenges to the sufficiency of the evidence. *People v Cox*, 268 Mich App 440, 443; 709 NW2d 152 (2005).

> [W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. [*People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).]

Defendant contends that the evidence was insufficient to support his conviction for aggravated stalking, given the instructions provided by the trial court to the jury. On pages 17 to 18 of his brief to this Court, defendant asserts that the trial court delivered the following instruction to the jury regarding the elements of aggravated assault:

> "To establish this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the defendant committed two or more willful, separate, and noncontinuous acts of unconsented contact with [FS].
>
> Second, that the contact would cause a reasonable individual to suffer emotional distress.
>
> Third, that the contact caused [FS] to suffer emotional distress.
>
> Fourth, that the contact would cause a reasonable individual to feel terrorized, frightened, intimidated, threatened, harassed, or molested.
>
> Fifth, that the contact caused [FS] to feel terrorized, frightened, intimidated, threatened, harassed or molested.
>
> Sixth, the stalking was committed in violation of a restraining order of which the defendant had actual notice."

Defendant argues that use of the phrase "a restraining order" in the sixth element means that, in order to convict him, the jury had to find beyond a reasonable doubt that he committed two separate acts of unconsented contact, and that those two separate acts were in violation of the same PPO. According to defendant, there was no evidence to support such a finding. Defendant observes that the most recent PPO was issued in June 2017, and asserts that the only testimony about conduct that might have violated that PPO was FS's testimony about the incident in November 2017, when defendant allegedly pulled in front of her on the highway, causing her to take defensive measures to avoid losing control of her car. According to defendant, there was no additional testimony about any other violation of the June 2017 PPO and, therefore, there was no

second incident of unconsented contact in violation of a single PPO, i.e., the June 2017 PPO. With regard to the prior PPOs, defendant argues that the prosecutor "muddied the waters" for the jury by eliciting testimony from FS about events alleged to have happened over the course of 10 years, without explaining to the jury that it could only consider the events of the previous six years. Defendant asserts that, for these reasons, the evidence was insufficient to support his conviction for aggravated stalking.

Defendant bases his argument on an incomplete quotation of the trial court's jury instructions. Defendant's quotation of the court's instructions regarding the elements of aggravated stalking is correct as far as it goes. However, defendant failed to quote the sixth element in its entirety. Regarding this element, the trial transcript reveals that the court instructed the jury as follows:

> Sixth, the stalking was committed in violation of a restraining order of which the defendant had actual notice. *Let me repeat this, the sixth, at least one of the acts constituting stalking was committed in violation of a restraining order of which the defendant had actual knowledge.* [Emphasis added.]

The italicized portion of the above-quoted instruction comports with the MCL 750.411i(2)(a), which provides:

> (2) An individual who engages in stalking is guilty of aggravated stalking if the violation involves any of the following circumstances:
>
> (a) At least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order or at least 1 of the actions is in violation of an injunction or preliminary injunction.

Thus, based on the court's instructions to the jury, to convict defendant of the charged crime required the jury to find beyond a reasonable doubt that defendant committed two acts as described in the instructions, one of which was in violation of a valid PPO. Defendant acknowledges that the November 2017 driving incident, if believed, could constitute a violation of the June 2017 PPO. And as described above, FS testified to numerous instances of stalking[7] allegedly committed by defendant after 2011 that, if believed, would constitute "two or more willful, separate, and noncontinuous acts of unconsented contact with [FS]." Thus, viewing the evidence in the light most favorable to the prosecutor, *Wolfe*, 440 Mich at 515, we conclude that

---

[7] MCL 750.411i(1)(e) defines stalking as:

> [A] willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that defendant was guilty of aggravated stalking.

Affirmed.

/s/ James Robert Redford
/s/ Jane M. Beckering
/s/ Michael J. Kelly