PEOPLE v MANN

Docket No. 288329. Submitted February 3, 2010, at Grand Rapids. Decided April 8, 2010, at 9:10 a.m.

Jacob P. Mann was convicted by a jury in the Berrien Circuit Court, Alfred M. Butzbaugh, J., of three counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct with regard to victims under 13 years of age. Defendant appealed.

The Court of Appeals *held*:

1. Evidence that defendant committed the crime of attempted first-degree criminal sexual conduct against a different minor victim before committing the instant offenses was admissible under MCL 768.27a(1). The evidence was relevant because it tended to show that it was more probable than not that the two minors in this case were telling the truth when they indicated that defendant had committed criminal sexual conduct offenses against them. The evidence also made the likelihood of defendant's behavior toward the minors in this case more probable. The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The jury was properly instructed that the only purpose for which the evidence could be considered was to help the jury judge the believability of the testimony regarding the acts for which defendant was on trial. The trial court did not abuse its discretion by admitting the evidence.

2. Comments by the prosecution about defendant not testifying, when viewed in context, were not comments on defendant's failure to testify, but rather, were comments regarding the fact that a statement by defendant regarding his intent was not necessary in order to prove his intent. Any prejudice that resulted was mitigated by the jury instructions. Defendant was not denied a fair trial or his rights to due process.

Affirmed.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Arthur J. Cotter*, Prosecuting Attorney, and *Aaron J. Mead*, Assistant Prosecuting Attorney, for the people.

*Law Office of John D. Roach, Jr., PLC* (by *John D. Roach, Jr.*), for defendant.

Before: Talbot, P.J., and Whitbeck and Owens, JJ.

Per Curiam. Following a consolidated trial, the jury convicted defendant, Jacob Mann, of three counts of first-degree criminal sexual conduct (CSC I),[1] and one count of second-degree criminal sexual conduct (CSC II).[2] The trial court sentenced Mann to 15 to 50 years' imprisonment for each of the three convictions for CSC I and to 4 to 15 years' imprisonment for the CSC II conviction, with credit for 156 days, the sentences to run concurrently. Mann appeals as of right. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

RB, one of the victims in this case, was eight years old at the time of the offense. He lived with his 18-year-old brother, PP, and their mother in a two-bedroom apartment in Berrien County. PP slept in one of the bedrooms and their mother slept in the other bedroom. RB used what was designed as a dining room for his bedroom. There were bunk beds in this room.

JB, another victim in this case, who was six years old and lived on the same street, sometimes played and spent the night with RB. Mann, who was 17 years old at the time of the offenses, was one of PP's friends. Mann was often at RB and PP's apartment playing video games with PP and frequently spent the night. When JB spent the night at the apartment, RB would usually sleep in one of the bunk beds and JB would sleep in the other. If JB was not spending the night, RB would sleep

---

[1] MCL 750.520b(1)(a).

[2] MCL 750.520c(1)(a).

in one of the bunk beds and Mann would sometimes sleep in the other. Because RB and PP's mother worked during the day and sometimes on the weekend, there were times when Mann was at the apartment without her being there.

The last time Mann spent the night at the apartment was in early March 2008. On March 10, 2008, RB began wanting to sleep with his mother all the time. RB told his mother that he felt safer sleeping with her. RB also told his mother that he did not want Mann spending the night anymore. When his mother asked why, RB stated that Mann touched him "badly." When asked to explain, RB indicated that Mann put his "front" in RB's "behind" and that Mann used lotion when he did this. RB also indicated that Mann made RB "suck him" and that Mann sucked RB as well. At trial, RB specifically testified that Mann did "[b]ad things" to him every time that Mann came over to the apartment. These bad things happened in RB's bedroom, in the bathroom, and in the front room. In addition, RB testified that when JB spent the night, RB saw Mann sucking JB in the top bunk bed when RB got up to go to the bathroom. JB testified at trial that Mann touched his penis with his hand on more than one occasion, but did not testify that there was any other sexual contact.

In response to RB's disclosure to her, RB's mother took him to the hospital for an examination. The examining physician found redness around RB's anus and a small, superficial abrasion about two millimeters long on his anus. RB's mother also recalled that within a month and a half before RB made his disclosure, she looked at RB's anus in response to his complaints of pain, and she noticed redness around his anus, but at the time, she presumed it was a heat rash.

While being interviewed by the police, Mann indicated that he played video games at RB and PP's apartment, but denied that the alleged crimes occurred. Mann did not testify at trial. A jury subsequently convicted Mann of three counts of CSC I and one count of CSC II as set forth above.

## II. PRIOR BAD ACT

### A. STANDARD OF REVIEW

Mann argues that his due process rights were violated because the trial court admitted evidence of a prior bad act that likely prejudiced the jury. We review for an abuse of discretion a trial court's decision to admit or exclude evidence.[3] Where the admission of evidence involves a preliminary question of law, we review that question de novo.[4]

### B. ANALYSIS

MCL 768.27a(1) provides, in pertinent part: "Notwithstanding [MCL 768.27], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."

In this case, Mann was accused of committing two listed offenses,[5] specifically, CSC I and CSC II.[6] And the

---

[3] *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

[4] *Id.*

[5] MCL 768.27a(2)(a) states: " 'Listed offense' means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722."

[6] MCL 28.722(e)(x) states that a "[l]isted offense" includes violations of MCL 750.520b (CSC I) and MCL 750.520c (CSC II).

victims in this case, eight-year-old RB and six-year-old JB, were minors when the offenses were committed.[7] In addition, there was evidence that Mann previously committed another listed offense in 2002, specifically, attempted CSC I against another minor.[8]

On the basis of the foregoing, we conclude that evidence that Mann committed the crime of attempted CSC I against a minor in 2002 was admissible to "be considered for its bearing on any matter to which it [was] relevant" in this case.[9] The challenged evidence was relevant because it tended to show that it was more probable than not that the two minors in this case were telling the truth when they indicated that Mann had committed CSC offenses against them.[10] The challenged evidence also made the likelihood of Mann's behavior toward the minors at issue in this case more probable.[11]

In addition, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.[12] Whether the minors in this case were telling the truth had significant probative value because it underlies whether Mann should be convicted of the crimes for which he was charged. Further, the trial court specifically instructed the jury on two occasions that the only purpose for which the evidence could be considered was to help them judge the believability of the testimony regarding the acts for which Mann was on trial. And jurors are presumed to follow their in-

---

[7] MCL 768.27a(2)(b).

[8] MCL 28.722(e)(*x*) and (*xiii*).

[9] MCL 768.27a(1).

[10] MRE 401.

[11] *Id.*; *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007).

[12] MRE 403; *Pattison*, 276 Mich App at 621 (stating that courts must still weigh the evidence under MRE 403).

structions.[13] Moreover, the trial court took precautions to limit any prejudicial effect by ensuring that the videotape of Mann's guilty plea to the prior offense was not played for the jury. Instead, the trial court allowed a stipulation that Mann committed the act to be entered into evidence.

In sum, we conclude that the trial court did not abuse its discretion by admitting evidence that Mann previously committed another listed offense against a minor because that evidence was properly admissible pursuant to MCL 768.27a(1). Because MCL 768.27a applied in this case, we need not consider whether the requirements of MCL 768.27 and its counterpart MRE 404(b) were met.[14]

### III. PROSECUTORIAL MISCONDUCT

#### A. STANDARD OF REVIEW

Mann argues that the prosecutor inappropriately commented during closing arguments on Mann's failure to testify. Therefore, he argues, his constitutional rights against self-incrimination and to due process were violated. Where issues of prosecutorial misconduct are preserved, we review them de novo to determine if the defendant was denied a fair and impartial trial.[15] Issues of prosecutorial misconduct are reviewed "on a case-by-case basis by examining the record and evaluating the remarks in context . . . ."[16]

---

[13] *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008).

[14] *People v Smith*, 282 Mich App 191, 205; 772 NW2d 428 (2009) ("Where listed offenses are at issue, the analysis begins and ends with MCL 768.27a.").

[15] *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004).

[16] *Id.* at 454.

### B. ANALYSIS

"A defendant in a criminal case has a constitutional right against compelled self-incrimination and may elect to rely on the 'presumption of innocence.' "[17] Hence, a prosecutor may not comment on a defendant's failure to testify.[18] Such remarks "are prohibited because they ask the jury to draw the inference that the defendant is guilty or hiding something merely because he has not taken the stand."[19] However, "[p]rosecutors are typically afforded great latitude regarding their arguments and conduct at trial. They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case."[20]

During her closing argument, the prosecutor discussed CSC II, specifically the difficulty of establishing the intent element of CSC II:

> Now sexual conduct, contact, is the difference. Sexual contact describes more—is more aimed at touching, fondling, that sort of thing, touching of the genital areas and touching with an intent—or a sexual intent.
>
> The judge is also going to instruct you, ladies and gentlemen, that intent can be derived not from just what a person says, but from that person's actions.
>
> So, ladies and gentlemen, it's difficult for me to know what anybody's thinking at any given time. It's difficult for me to prove what anybody's thinking. But you can use not only what their [sic] thinking and what their [sic] saying, but also what they're doing to determine what their intent was at the time.

---

[17] *People v Fields*, 450 Mich 94, 108-109; 538 NW2d 356 (1995), citing US Const, Am V; Const 1963, art 1, § 15.

[18] *Fields*, 450 Mich at 108-109; MCL 600.2159.

[19] *People v Buckey*, 424 Mich 1, 14; 378 NW2d 432 (1985).

[20] *Unger*, 278 Mich App at 236 (citation omitted).

The prosecutor later turned to the subject of Mann's intent:

> So we know . . . that his intent in this particular case, looking at the way that he conducted business, the way that he acted throughout this time, we know that his intent was sexual because it's been his intent, all along it's been sexual. We don't know. He didn't say. He didn't tell us. So we don't have that evidence. But based on—

Defense counsel objected, and the prosecutor withdrew the statement and then stated: "We can't read Jacob's mind, I guess, is a better way to say. So we don't know—I can't prove what's in his mind."

We conclude that although the prosecutor's comment about Mann not testifying could be read as implicating a potential violation of Mann's right to remain silent, the impropriety did not rise to the level of a due process violation. Intent is an element of CSC II, and the prosecutor's theory of the case was that Mann met the elements of CSC II, including the intent element, because Mann intentionally touched the victim for a sexual purpose.[21] Viewed in context, the prosecutor was arguing that the jury could infer intent from Mann's actions and thus proof of Mann's intent did not need to stem from Mann stating his intent, something Mann did not do. The prosecutor's argument supported her theory of the case, which was that Mann intended to commit an offense that was sexual in nature. And it was clear that the prosecutor was not actually commenting on Mann's failure to testify but on the fact that a defendant's statement is not necessary to prove intent. On the record, the argument was not improper.

Moreover, an appropriate response to an objection for an improper remark by a prosecutor is the issuance of a

---

[21] See MCL 750.520c(1)(a); MCL 750.520a(q).

curative instruction.[22] Although defense counsel did not request a curative instruction or a ruling from the trial court on defense counsel's objection, the trial court instructed the jurors that "[e]very defendant has the absolute right not to testify. When you decide the case you must not consider the fact that he did not testify. It must not affect your verdict in any way." In addition, the trial court also provided the jurors with the standard jury instructions regarding what may be considered as evidence and how they must use their common sense in deciding the case. Any prejudice flowing from the prosecutor's remark was mitigated by the jury instructions.[23] Based on the foregoing, the prosecutor's remark did not deny Mann a fair trial or his due process rights under the Michigan and federal constitutions.

Affirmed.

---

[22] *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

[23] *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors.").