*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 15, 2021

Plaintiff-Appellee,

v

No. 353003
Ottawa Circuit Court
LC No. 19-042899-FH

TRISTEN SCOTT REYES,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of assault with the intent to commit sexual penetration, MCL 750.520g(1); and criminal sexual conduct in the fourth degree (CSC-IV), MCL 750.520e(1)(a). The trial court sentenced defendant to concurrent prison terms of 36 to 120 months for the assault conviction and 14 to 24 months for the CSC-IV conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On October 19, 2018, the complainant, RL, was walking home at approximately 1:00 a.m., accompanied by a friend. RL testified at trial that defendant jumped between her and her friend, faced RL, put his hand around her neck, grabbed her left breast, and then slid his hand under her skirt and tried to move her underwear aside. RL testified that she yelled for her friend, who turned around, realized what was happening, pushed defendant away, and told him that he needed to leave. RL's friend testified similarly. Defendant testified and admitted to encountering RL and her friend, but denied sexually assaulting RL; defendant testified that he had observed RL and her friend urinating on a lawn, and that they "took off screaming" when he told them he was going to call the police.

The jury found defendant guilty as described. This appeal followed.

-1-

## II. PROSECUTORIAL MISCONDUCT

Defendant argues that he was denied a fair trial when the prosecution committed misconduct[1] by allegedly vouching for RL during voir dire and when it referred to RL as "the victim" 71 times during the course of the trial. We disagree. "Because defendant did not object to the prosecutor's remarks at trial, we review this unpreserved claim for plain error affecting substantial rights." *People v Savage*, 327 Mich App 604, 615-616; 935 NW2d 69 (2019). "A plain error is one that is clear or obvious, and the error must affect the defendant's substantial rights." *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015) (quotation marks and citation omitted). "That is, the defendant must have been prejudiced by the plain error." *Id*. "No error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001) (quotation marks and citation omitted). A timely jury instruction will often cure the prejudicial effect of an improper statement by the prosecution. See *People v Mann*, 288 Mich App 114, 122 ; 792 NW2d 53 (2010). "Jurors are presumed to follow their instructions and instructions are presumed to cure most errors." *Id*. at 122 n 23 (quotation marks and citation omitted).

In *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007), this Court stated:

> Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case. A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. [Quotation marks and citations omitted.]

Additionally, "[p]rosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *Dobek*, 274 Mich App at 66. Moreover, the prosecution "need not confine argument to the blandest possible terms." *Id*. "A prosecutor may not vouch for the credibility of a witness by conveying to the jury that he has some special knowledge that the witness is testifying truthfully." *People v Clark*, 330 Mich App 392, 434; 948 NW2d 604 (2019). "The prosecutor may, however, argue from the facts that a witness is worthy of belief." *Id*.

---

[1] In *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), this Court discussed the use of the term "prosecutorial misconduct" to describe conduct that is better classified as "prosecutorial error." Because defendant claims that the prosecution repeatedly and deliberately vouched for RL's credibility, rather that committed a technical or inadvertent error, we will adopt defendant's label for his claim as one of prosecutorial misconduct. *Id*.

Defendant argues that the following exchange between the prosecution and a potential juror during voir dire was improper, because it vouched for RL's upcoming testimony:

> [*Prosecution*]: In privacy. Do you think it would be difficult for someone to talk about a sexual experience with a stranger, with someone that they didn't even know? Do you think that would affect their ability to talk about something as difficult as sexual violence?
>
> Ladies and gentlemen, how do you think it would feel to have a lawyer pick apart your testimony regarding every single detail about a violent sexual attack? Do you think that would be difficult?
>
> [*Unknown Male Juror*]: Yes.
>
> [*Prosecution*]: Can you keep that in mind as the jury—as—as the trial is going on? Do you think that, when a person is being attacked, they're thinking about, "I better remember what I was wearing, I better remember what time it was, I better remember what street I was on, I better remember what sidewalk I was on, I better remember all of these details," do you think that's going through a victim's head?

In context, these statements were not objectionable. The prosecution did not present an argument; rather, it asked hypothetical questions of potential jurors in order to get a sense of how they might react to witness testimony. This conclusion is supported by the statements the prosecution made immediately following the challenged statements:

> [*Prosecution*]: Can you keep that in mind as the jury—as—as the trial is going on? Do you think that, when a person is being attacked, they're thinking about, "I better remember what I was wearing, I better remember what time it was, I better remember what street I was on, I better remember what sidewalk I was on, I better remember all of these details," do you think that's going through a victim's head?
>
> [*Juror*]: No.
>
> [*Prosecution*]: Why not?
>
> [*Juror*]: They've got bigger problems.
>
> [*Unknown Male Juror*]: A lot of survival instincts.
>
> [*Juror T*]: That's right.
>
> [*Prosecution*]: Does everyone understand that that could potentially affect someone's ability to remember every single detail about what was taking place?
>
> (Jurors heads nodding in affirmative response)

The prosecution did not imply that it had some special knowledge that RL was going to testify truthfully. *Clark*, 330 Mich App at 434. Rather, in context, the prosecution's remarks were aimed at discovering how potential jurors might consider the facts of the case, and the evidence that was going to be admitted at trial, when evaluating RL's credibility. At most, the prosecution suggested the possible inference that the circumstances surrounding the assault may have potentially affected RL's memory of minor details. See *Dobek*, 274 Mich App at 66. The prosecution's statements did not improperly vouch for RL's credibility. Additionally, the trial court instructed the jury pool during voir dire that the purpose of voir dire was to obtain information about the jurors in order to choose an impartial jury, and instructed the jury prior to its deliberation that the statements of attorneys were not evidence. Defendant has not shown that the prosecution's statements were impermissible or that, even if they were, any prejudicial effect was not cured by the trial court's instruction. *Mann*, 288 Mich App at 122 n23.

Next, defendant argues that the prosecution committed prosecutorial misconduct when it referred to RL as "the victim" 71 times during its opening statement and its closing and rebuttal arguments, because the term implied that defendant was guilty. It is true that the prosecution referred to RL as "the victim" multiple times; however, the reference was appropriate and accurate. MCL 750.520a(s) defines "victim" as "the person alleging to have been subjected to criminal sexual conduct." RL alleged that she was subjected to criminal sexual conduct. Therefore, the prosecution properly referred to her as a "victim."

Nevertheless, defendant relies on a statement made in *People v Stanaway*, 446 Mich 643, 677 n 37; 521 NW2d 557 (1994), that "the legal status of an accuser as victim does not obtain until a conviction is entered." However, the issue in *Stanaway* was whether statutorily privileged health records were discoverable by the defendant in a criminal trial; further, the statement that defendant relies on was made in a footnote in the majority opinion, to address a suggestion made by a concurring justice, and had no bearing on the Supreme Court's ruling. This statement was obiter dictum because it was "unnecessary to determine the case at hand and, thus, lack[ed] the force of an adjudication." *People v Peltola*, 489 Mich 174, 190 n 32; 803 NW2d 140 (2011) (quotation marks and citation omitted). "Obiter dicta are not binding precedent." *Id.* In any event, this statement was made in the context of protecting a defendant's constitutional due process rights in relation to a third party's assertion of a statutory privilege, and the Court merely stated in that context that "[i]t should be remembered that the legal status of an accuser as victim does not obtain until a conviction is entered." *Stanaway*, 446 Mich 677 n 37. The Court did not state, or suggest, that it was reversible error for the prosecution to refer to a complainant as a "victim" before conviction. Defendant has failed to establish error, plain or otherwise. See *Cooper*, 309 Mich App at 88.

Furthermore, even if the prosecution's statements had amounted to misconduct, defendant has not shown that it was outcome determinative. *Id.* The jury heard testimony from 11 witnesses, as well as the recordings of the 911 calls relating to the assault. Defendant testified to his version of events and clearly was found by the jury not to be credible. Defendant has not demonstrated that it was the prosecution's reference to RL as a victim, rather than the evidence presented, that was the basis for the jury's verdict, and defendant has therefore failed to establish that the prosecution's comments affected his substantial rights. *Id.*

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues in the alternative that it was ineffective assistance of counsel for defense counsel not to object to the alleged prosecutorial misconduct. We disagree. A claim of ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review the trial court's factual findings, if any, for clear error, and review constitutional issues de novo. *Id*. Because no evidentiary hearing was held, we review defendant's claim for errors apparent on the record. *People v Hieu Van Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019).

To establish that defense counsel was ineffective, a defendant must demonstrate that "(1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012); see also *Strickland v Washington*, 466 US 668, 689-696; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

Defendant cites *Washington v Hofbauer*, 228 F3d 689 (CA 6, 2000),[2] for the proposition that failing to object to prosecutorial misconduct, without a legitimate strategic reason, was below the objective standard of reasonableness for defense counsel under prevailing professional norms. However, defense counsel was not required to object to the statements made by the prosecution because, as discussed, those statements did not constitute prosecutorial misconduct. "[C]ounsel does not render ineffective assistance by failing to raise futile objections." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003).

In any event, even if defense counsel's failure to object were objectively unreasonable, defendant has not demonstrated a reasonable probability that the result of the proceeding would have been different had defense counsel objected. *Lockett*, 295 Mich App at 187. As stated, the jury was presented with substantial evidence to establish the elements of assault with the intent to commit sexual penetration and CSC-IV. Defense counsel's failure to object to the alleged prosecutorial misconduct was not sufficient to outweigh the great evidence of guilt. See *Trakhtenberg*, 493 Mich at 56. Defendant did not receive the ineffective assistance of counsel.

Defendant also argues that the cumulative effect of repeated misconduct on the part of the prosecution denied him due process and a fair trial. We disagree. "Absent the establishment of

---

[2] "While the decisions of lower federal courts and other state courts are not binding on this Court, they may be considered as persuasive authority." *People v Walker (On Remand)*, 328 Mich App 429, 444-445; 938 NW2d 31 (2019) (quotation marks and citation omitted); see also *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004) ("Although state courts are bound by the decisions of the United States Supreme Court construing federal law, there is no similar obligation with respect to decisions to the lower federal courts.").

errors, there can be no cumulative effect of errors meriting reversal." *Dobek*, 274 Mich App at 106.

  Affirmed.


         /s/ Amy Ronayne Krause
         /s/ Jane M. Beckering
         /s/ Mark T. Boonstra