*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

CLIFFORD LEVI-ISRAEL MATHIS,

       Defendant-Appellee.

UNPUBLISHED
September 22, 2022

No. 359847
Kalamazoo Circuit Court
LC No. 2019-001057-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

EDGAR BUTLER IV,

       Defendant-Appellee.

No. 359848
Kalamazoo Circuit Court
LC No. 2019-000916-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

KARL DERELL BUTLER,

       Defendant-Appellee.

No. 359849
Kalamazoo Circuit Court
LC No. 2019-001056-FC

---

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

The prosecutor appeals by interlocutory leave granted[1] the trial court's order granting defendants' motion to introduce evidence of a previous sexual assault allegation made by the complainant. The trial court concluded defendants made a sufficient offer of proof that the prior allegation was false such that evidence of the allegation could be admitted in defendants' trial. Because we conclude the trial court abused its discretion when it granted defendants' motion, we reverse.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The complainant, KQ, alleged that in February 2009, she became intoxicated at a party and was driven home by a friend to her dorm room at approximately 2:00 a.m. She claimed that defendants followed her into her residence hall and then forcibly entered her dorm room, after which they sexually assaulted her both orally and vaginally. Defendants admitted they engaged in sexual activity with KQ but maintained that it was a consensual encounter. Although the police conducted an investigation, the matter was not submitted for prosecution in 2009. However, the matter was reinvestigated in 2018 and, as a result of the Attorney General's "Sexual Assault Kit Initiative," the matter was submitted for prosecution. The defendants were subsequently bound over for trial by the district court.

After defendants were bound over for trial, they moved to admit evidence of a previous sexual assault allegation made by KQ in November 2008, in which KQ alleged that while intoxicated at a party, she engaged in a consensual sexual encounter with KB, a partner with whom she was sexually involved. During the encounter, another individual, NS, whom she did not know but was known to KB, entered the room and also engaged in sex acts with KQ. At the point in which NS entered the room, KQ claimed the encounter with both men was not consensual. Although the police investigated the allegation, neither KB nor NS were prosecuted for rape.

Defendants argued that the November 2008 allegation was false and, therefore, evidence regarding the allegation was admissible at trial under MRE 404(b), MRE 406, and MRE 608. The prosecutor opposed the motions, arguing that defendants had not established that the previous rape allegation was false and that neither the rules of evidence nor the rape-shield statute, MCL 750.520j, allowed for the admission of this evidence. The trial court concluded that the evidence was inadmissible because defendants failed to make a sufficient offer of proof that the November 2008 allegation was false.

Defendants thereafter filed renewed motions to admit evidence of the November 2008 allegation. In the briefs filed in support of these motions, defendants asserted that they were in possession of additional evidence which demonstrated that the November 2008 allegation was false. At a hearing regarding defendants' renewed motions, defendants argued that the trial court should conduct an *in camera* review of the evidence related to the November 2008 allegation to

---

[1] *People v Mathis*, unpublished order of the Court of Appeals, entered March 2, 2022 (Docket No. 359847). In this order, this Court also consolidated the appeals in Docket Nos. 359847, 359848, and 359849. *Id*.

determine if it was relevant to trial. The trial court agreed, and the parties stipulated to the submission of six documents to the trial court.[2]

After the trial court conducted its review, it granted defendants' motions to introduce evidence regarding the November 2008 allegation. The trial court found that because the November 2008 and February 2009 allegations were close in time and had similar fact patterns— they both involved alcohol and multiple sex partners—defendants' offer of proof was sufficient to allow them to introduce the evidence. The trial court did not conduct an evidentiary hearing to determine the admissibility of the proposed evidence, instead stating that the admissibility would be determined at trial "depend[ing] on what the testimony is . . . ." This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019). However, in exercising its discretion in the context of evidence related to a complainant's sexual conduct, "the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation." *People v Hackett*, 421 Mich 338, 349; 365 NW2d 120 (1984).

## III. DISCUSSION

The prosecutor argues the trial court abused its discretion when it concluded defendants submitted sufficient evidence that the 2008 allegation was false such that defendants could introduce evidence of that allegation in defendants' trial. We agree.

The prosecutor contends that the evidence regarding the 2008 allegation is not admissible, as a complainant's prior sexual history is not relevant to whether she was raped by defendants. Under the rape-shield law, MCL 750.520j(1):

> Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) Evidence of the victim's past sexual conduct with the actor.

---

[2] The relevant portions of these documents, which consist of a police report made after the alleged assault in 2008 and follow-up interviews in 2019, will be discussed in more detail below.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

However, as recognized by the Michigan Supreme Court, "while the extent of cross-examination is within the discretion of the trial court there is a dimension of the Confrontation Clause that guarantees to defendant a reasonable opportunity to test the truth of a witness' testimony." *Hackett*, 421 Mich at 347. Thus, "[t]he fact that the Legislature has determined that evidence of sexual conduct is not admissible as character evidence to prove consensual conduct or for general impeachment purposes is not however a declaration that evidence of sexual conduct is never admissible." *Id.* at 348. As relevant to this case, the Michigan Supreme Court stated that, notwithstanding the rape-shield law, "the defendant should be permitted to show that the complainant has made false accusations of rape in the past." *Id.*

When a defendant seeks to admit evidence of a false sexual assault allegation, "[t]he defendant is obligated initially to make an offer of proof as to the proposed evidence and to demonstrate its relevance to the purpose for which it is sought to be admitted." *Id.* "If there is a sufficient offer of proof as to a defendant's constitutional right to confrontation, as distinct simply from use of sexual conduct as evidence of character or for impeachment, the trial court shall order an *in camera* evidentiary hearing to determine the admissibility of such evidence . . . ." *Id.* at 350. We turn, then, to the evidence presented by defendants to determine whether they made a sufficient offer of proof.

The primary document submitted by defendants in support of their motions was the police report prepared after KQ made the 2008 allegation. In that report, and as described above, KQ claimed she was engaging in a consensual sexual encounter with KB while intoxicated at a party. During this encounter, she claimed that NS entered the room, began fondling her at first, and then he and KB engaged in sex acts with her against her will. At some point during this ordeal, KQ stated she was able to get up and collect her things. She then ran out of the house and down the street to a restaurant, where police were called.

Both KB and NS disputed KQ's version of events. KB stated that while he and KQ were engaging in consensual sex, NS entered the room. He claimed that when KQ saw NS, she stated that she wanted NS to join as well. KB was adamant that KQ explicitly agreed to the encounter. He did admit, however, that after the encounter, he heard KQ claim she was raped, but did not think anything of it because she was a "drama queen." NS also claimed the encounter was consensual, although his version of events differed slightly from KB's. According to NS, when he entered the room, he saw KB and KQ and asked, "How 'bout me?" NS stated that he then began undressing and engaged in sex acts with KQ.

The police report also contained a notation by Detective Matthew Schultz, in which he stated that Officer Rebecca Vanbrocklin claimed to have heard KQ and a friend, while in the back of a patrol car after the incident, "joke[]" about putting the suspects in jail and laugh about it. In a follow-up interview in 2019, Officer Vanbrocklin stated she did not have any independent memory of it, but believed it would have been recorded either in video or audio. Similarly, Detective Schultz did not have any independent recollection of the case, and stated he paraphrased the conversation between KQ and her friend, as described by Officer Vanbrocklin. Ultimately, the case against KB and NS was not referred for prosecution.

In *People v Williams*, 191 Mich App 269, 273; 477 NW2d 877 (1991), we affirmed the trial court's order denying the defendant's attempt to introduce evidence that the victim made prior false allegations about being sexually abused by her uncle. This Court summarized the defense counsel's proposed proofs as follows:

> [W]hat defense counsel endeavored to do was to put the victim's mother and, apparently, one other witness on the witness stand and question them under oath concerning the truth or falsity of the victim's prior accusation, in hopes that their answers would reveal that the prior accusation was false. In short, defense counsel had no idea whether the prior accusation was true or false and no basis for believing that the prior accusation was false. [*Id*. at 273-274.]

In concluding that this evidence should be excluded and that an evidentiary hearing was not warranted, we first concluded that the defendant's offer of proof was defective because he failed to offer "any concrete evidence to establish that the victim made a prior false accusation." *Id*. And like the case at bar, in *Williams*, no charges had been brought against the uncle; however, we did not view this as an indication that the allegations were false, stating: "No criminal charges were pursued against the uncle and, therefore, there had never been a determination by a court of the truth or falsity of the accusation." *Id*. at 273 n 1. Thus, because the defendant was unable to offer sufficient proof of the falsity of the accusation, the defendant was "not entitled to have the court conduct a trial within the trial to determine whether there was a prior accusation and whether that prior accusation was true or false." *Id*. at 274.

This Court has, however, held that in certain circumstances, criminal defendants are allowed to confront their accusers with evidence that they made false accusations of rape. In *People v Rogers*, 335 Mich App 172, 177 (2020), the defendant was convicted of first-degree criminal sexual conduct involving his daughter. While on appeal, the defendant sought a remand on the basis of newly discovered evidence that showed the victim recanted her allegations against him. *Id*. at 180-181. We remanded the case to allow the defendant to seek a new trial or other relief from judgment. *Id*. at 181.

During the remand proceedings, evidence was developed that the victim had also accused her adoptive father and brother of raping her. *Id*. at 187. However, after obtaining immunity with respect to those allegations, the victim admitted she fabricated the accusations because she was angry with her adoptive mother for having her arrested for domestic violence. *Id*. On the basis of this and other evidence showing the victim also lied about the accusations about the defendant, the defendant moved for a new trial, which was denied by the trial court. *Id*. at 188-189.

We reversed the trial court's order and, as relevant here, determined the trial court abused its discretion by failing to consider the evidence that the victim made false accusations of rape. *Id*. at 203. We explained that in the defendant's subsequent retrial, there would be "little reason to keep this evidence out," explaining that "[t]he evidence is not subject to the rape-shield statute." *Id*. Thus, the victim's "testimony admitting that she lied could be used not just for impeachment purposes, but as a 'prior statement of witness' under MRE 801(d)(1)(A); [and] the testimony could also be used as substantive evidence of motive and scheme, plan, or system under MRE 404(b)." *Id*.

This case is more factually similar to *Williams* than it is *Rogers*. Most obviously, KQ has never retracted her allegations that she was raped by KB and NS, and a court has never adjudicated the allegations against the men. Indeed, when re-interviewed in 2019, KQ again affirmed that she was raped by both men. The only evidence that the allegations *may be* false are the denials by KB and NS, as well as the purported "joke[]" made by KQ while in the patrol car. The fact that KB and NS were never charged was an insufficient offer of proof to allow defendants to introduce evidence of the 2008 allegation. See *Williams*, 191 Mich App at 273 n 1 (concluding the defendant was not entitled to introduce evidence of prior false accusation where "there had never been a determination by a court of the truth or falsity of the accusation"); see also *People v Yarger*, 193 Mich App 532, 538; 485 NW2d 119 (1992), overruled on other grounds by *People v Cooks*, 446 Mich 503, 530; 521 NW2d 275 (1994) ("The bare facts that one of the subjects of an accusation was not bound over for trial and that no investigation was conducted in the other incident do not show that the accusations were false.").

Likewise, the allegation that KQ and her friend "joked" about the incident while in the patrol car is also insufficient. The hearsay statement, as it stands, has little to no probative value, as it is a vague assertion that, after being sexually assaulted, KQ joked with her friend about sending KB and NS to jail. This statement, even when coupled with KB and NS's denials, does not tend to show that KQ's accusation was false. There are a myriad of explanations for the purported behavior, including nervousness about the situation or a resoluteness to see her attackers prosecuted. Moreover, the exclusion of evidence of a complainant's prior sexual conduct must always be favored, see *Hackett*, 421 Mich at 349, and mere denials from alleged perpetrators—when the complainant has never recanted or admitted the falsity of allegations—do not constitute "concrete" evidence of falsity that warrants presenting the issue to the jury. See *Williams*, 191 Mich App at 273-274. To conclude otherwise, and to submit credibility questions related to the 2008 incident to the jury, would be to open the door to a "trial within a trial" on the truth or falsity of previous allegations, which *Williams* instructs is improper.

We also disagree with the trial court's conclusion, and defendants' suggestion, that the circumstances of the two allegations are substantially similar. While it is true that both events involved alcohol, multiple alleged assailants, and occurred close in time, these similarities do not tend to show the 2008 allegation was false. Moreover, they are similarities only on the surface. In the 2008 allegation, KQ was at a party where she engaged in a consensual sexual encounter with KB, a man with whom she was already romantically involved. The encounter allegedly went from consensual to nonconsensual after NS entered the room and began performing unwanted sex acts on her. This is in contrast to the case at bar, in which KQ claims she was dropped off at her dorm by a friend after attending a party, after which she was followed by the defendants, unknown to her, who then forcibly entered her dorm room and sexually assaulted her.

We also reject defendants' suggestion that the 2008 allegation was false under the "doctrine of chances." In short, defendants assert that because KQ has a history of drinking alcohol, engaging in sexual conduct, and subsequently alleging she was assaulted, the possibility that she was actually assaulted, as opposed to fabricating the events, is small. See *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010) (explaining that "as the number of incidents of an out-of-the-ordinary event increases in relation to a particular defendant, the objective probability increases that the charged act and/or the prior occurrences were not the result of natural causes."). As noted above, we reject the assertion by defendants that KQ "was sexually assaulted in the exact

same way under the exact same circumstances . . . ." Moreover, it borders on the offensive for defendants to suggest that a woman who has been raped more than once, even under similar circumstances, must be lying because, "what are the chances?".

Because we conclude the trial court abused its discretion when it granted defendants' motion, we need not address the prosecutor's additional arguments as to whether the evidence was or was not otherwise admissible under the relevant rules of evidence.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly