*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision
until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 12, 2025
2:08 PM

Plaintiff-Appellee,

v

No. 369406
Wayne Circuit Court
LC No. 22-006078-01-FC

LAVONTE JAVON SEABORN,

Defendant-Appellant.

Before: MALDONADO, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of second-degree murder, MCL 750.317, and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 20 to 40 years' imprisonment for second-degree murder, and two years' consecutive imprisonment for each felony-firearm conviction. On appeal, defendant argues: (1) he is entitled to a new trial because his convictions are against the great weight of the evidence; (2) a witness's identification of defendant for the first time at trial violated his right to a fair trial; (3) the prosecution's failure to conduct an adequate investigation deprived defendant of his right to a fair trial; and (4) the prosecutor committed misconduct when he noted, during closing argument, codefendant chose not to testify. We affirm.

## I. BACKGROUND

This matter involves a shooting in downtown Detroit. Raven Walker, defendant, and codefendant, Montez Mapp,[1] were downtown when a group of approximately 12 people approached. Walker believed that the group was threatening. Mapp was armed and fired a warning shot into the air. The group ran away, and defendant fired at the group, striking Dametrion Franklin from behind in the back and head. Franklin died. Reginald Tucker was in the group that was approaching defendant and his friends, and

---

[1] Mapp was tried with defendant and convicted of reckless use of a firearm. He has not appealed and is referenced for context.

returned fire. Defendant was arrested and charged with second-degree murder, assault with intent to commit murder (AWIM), and two counts of felony-firearm. At defendant's trial, the jury viewed a surveillance video showing defendant shooting at the approaching group and striking Franklin. The jury convicted defendant of second-degree murder and two counts of felony-firearm, but acquitted him of AWIM. Several days before sentencing, defendant moved for judgment notwithstanding the verdict and for a new trial, arguing that there was insufficient evidence to establish that bullets from his gun killed Franklin. The trial court denied defendant's motion and sentenced him as discussed above. This appeal followed.

## II. GREAT WEIGHT OF THE EVIDENCE

Defendant argues that his second-degree-murder conviction was against the great weight of the evidence. We disagree.

### A. STANDARD OF REVIEW

This Court "review[s] for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *Id*.

### B. ANALYSIS

"A verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Evans*, 335 Mich App 76, 87; 966 NW2d 402 (2020) (quotation marks and citation omitted). "Generally, a verdict is against the great weight of the evidence only when it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. (quotation marks and citation omitted).

The elements of second-degree murder are (1) a death, (2) caused by an act of the defendant, and (3) with malice. *People v Spears*, 346 Mich App 494, 514-515; 13 NW3d 20 (2023). In criminal matters in general, "the prosecution [is] required to prove causation beyond a reasonable doubt." *People v Feezel*, 486 Mich 184, 193; 783 NW2d 67 (2010).

Defendant first argues that the lack of ballistic evidence rendered his conviction against the great weight of the evidence because it was impossible for the jury to infer that his actions caused Franklin's death.

However, the bulk of the evidence was adequate to prove causation. Tucker stated that he fired back at defendant and Mapp after seeing muzzle flashes. Xavier Williams confirmed that he heard gunshots coming from Mapp's and defendant's direction. Further, Dr. Lokman Sung, the medical examiner, confirmed that Franklin was hit from behind, suggesting that he was running away from Mapp and defendant. Further, Detective Brad Comer noted there were casings from three calibers recovered from the scene. Mapp fired into the air and Tucker fired at Mapp and defendant, not toward Franklin. Thus, although circumstantial, the jury could infer based on this testimony that the two bullets that hit Franklin's back and head originated from defendant's gun. This inference is based entirely on trial testimony, not the surveillance video, which actually shows defendant firing a gun at the crowd and a

bullet striking Franklin in the head immediately thereafter, confirming the trial testimony. Additionally, defendant's theory of the case at trial was that he acted in self-defense, which necessitates an admission he shot at the crowd. As a result, defendant's second-degree murder conviction was not against the great weight of the evidence notwithstanding that the prosecution did not introduce ballistics evidence establishing that bullets from defendant's gun struck Franklin.

Next, and somewhat inconsistently, defendant argues that his second-degree murder conviction was against the great weight of the evidence because the evidence supported his theory he acted in self-defense. Defendant asserts that he was justified in shooting at the crowd because he felt threatened by its demeanor and Tucker's shots.

"With the enactment of the Self–Defense Act (SDA), MCL 780.971 *et seq*., the Legislature codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *People v Dupree*, 486 Mich 693, 708; 788 NW2d 399 (2010).

The SDA states, in relevant part:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. [MCL 780.972(1)(a).]

"[O]nce a defendant satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt." *People v Rajput*, 505 Mich 7, 11; 949 NW2d 32 (2020) (quotation marks and citation omitted).

Walker stated that the crowd appeared "kind of riled up." Other than this testimony, the record does not support defendant's contention that he honestly and reasonably believed using deadly force was necessary to prevent harm. See MCL 780.972(1)(a). Walker's testimony lacked specificity about the nature of the threat. Walker noted that members of the group appeared to be reaching in their pants, and she opined that they were reaching for weapons. However, she did not see any weapons. Further, only Mapp, defendant, and Tucker displayed guns. The sequence of events is critical in determining whether defendant acted in self-defense. Mapp fired into the air when he saw the crowd approach, defendant fired into the crowd, and Tucker returned fire in response to defendant's muzzle flashes. Williams confirmed that he heard shots fired in his direction before Tucker fired his gun. After hearing Mapp's gunshots, Williams ran away. Franklin was struck twice in the back, suggesting that he was also running away from Mapp and defendant when defendant fired into the crowd. Thus, the testimony suggests that defendant was the first person to fire into the group of people. The surveillance video confirmed this sequence of events, belying defendant's self-defense theory.

Ultimately, the trial court instructed the jury regarding self-defense, and the jury rejected defendant's self-defense theory. A review of the record indicates that this rejection was not against the great weight of the evidence, and the trial court did not abuse its discretion when it denied defendant's

motion for judgment notwithstanding the verdict and for a new trial. See *Lacalamita*, 286 Mich App at 469.

## III. WITNESS IDENTIFICATION

Next, defendant argues that Williams's first-time identification of him at trial as a shooter on the night in question violated his right to due process. We disagree.

## A. STANDARD OF REVIEW

To preserve an issue implicating due process, defendant must object when the evidence is introduced. *People v Posey*, 512 Mich 317, 331; 1 NW3d 101 (2023). Here, defense counsel "did not object to [Williams's] in-court identification of defendant, the key issue that defendant argues violated his due-process rights, so the issue is not preserved." *Id*. at 331-332.

"Unpreserved constitutional questions are reviewed for plain error affecting defendant's substantial rights." *Id*. at 332. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

## B. ANALYSIS

"The procedure used to obtain identification evidence of a witness is an important consideration under the both the state and federal Constitutions' protections of defendants' rights to due process of law. US Const Am XIV; Const 1963, art 1, § 17[.]" *Posey*, 512 Mich at 331. "A defendant's due-process rights protect against the admissibility of in-court identification evidence that was preceded by a pretrial identification procedure that was so unnecessarily suggestive as to be conducive to mistaken identity." *Id*. at 332 (quotation marks and citation omitted). Further, as relevant to the matter before us, "when there is no pretrial identification of the defendant by the witness at all and the identification evidence is presented for the first time before a jury, . . . reliability is the linchpin in determining the admissibility of identification testimony." *Id*. at 337 (cleaned up). "[D]ue-process rights are . . . implicated when the prosecution . . . conducts an unnecessarily suggestive *in-court* law-enforcement procedure by obtaining an in-court identification of a defendant by a witness who was unable to identify a defendant at any point prior to that identification." *Id*. at 338. "Accordingly, . . . evidence of an unnecessary first-time-in-court identification procured by the prosecution—a state actor—implicates a defendant's due-process rights in the same manner as an in-court identification that is tainted by an unduly suggestive out-of-court identification procedure employed by the police." *Id*. at 339. "Because the same due-process rights are affected, trial courts must consider reliability factors such as those at issue when an in-court identification is tainted by an unduly suggestive out-of-court identification procedure." *Id*. at 339-340.

In this case, Williams spoke with police officers at the hospital after the shooting but did not identify defendant as a shooter at that time. In particular, based on his written statement, when asked by the police at the hospital if he saw who was shooting, Williams replied "no." However, for the first time,

at trial, he identified Mapp and defendant as the shooters, and confirmed during cross-examination that he saw Mapp and defendant fire guns. Williams confirmed that he did not see the surveillance video before trial and was unaware that pretrial proceedings were streamed online. Further, the police did not show Williams a lineup or photo array of Mapp or defendant.

Under these circumstances, the trial court likely committed plain error by allowing Williams to identify defendant as a shooter at trial because, under *Posey*, such a first-time-in-court identification procedure generally is inadmissible without a consideration of reliability factors.[2] Indeed, the prosecution's brief on appeal does not argue otherwise. Instead, the prosecution simply asserts that defendant is not entitled to relief because he cannot show prejudice.

We agree with the prosecution that there is no prejudice to defendant. The surveillance video showed defendant as a shooter. Further, it was defendant's theory of the case that he acted in self-defense, which was an admission that he was a shooter. Indeed, defense counsel asserted during closing argument, when summarizing the trial testimony, that "Mr. Seaborn fires his gun" around the time when Tucker fired his gun. Given these facts, in which both the video and defendant's own theory of the case establish that defendant was a shooter, it is impossible to conclude that Williams's in-court identification of defendant as a shooter affected his substantial rights. Therefore, defendant is not entitled to relief for this issue.

## IV. ADEQUATE INVESTIGATION

Next, defendant argues the prosecution failed to adequately investigate the shooting, and that this violated his right to a fair trial. Specifically, defendant argues that "[t]he failure to analyze the rifle and bullets supplied by Dr. Sung violated [his] right to a fair trial." We disagree.

### A. STANDARD OF REVIEW

To preserve an issue implicating due process, a defendant must object when the evidence is introduced. See *Posey*, 512 Mich at 331. Defendant did not object on this basis, resulting in this issue being unpreserved. "Unpreserved constitutional questions are reviewed for plain error affecting defendant's substantial rights." *Id*. at 332.

### B. ANALYSIS

Initially, we note that defendant cites *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and its progeny, but it is unclear how *Brady* is supporting authority for his position. The United States Supreme Court in *Brady*, 373 US at 87, held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* does not impose an obligation on the prosecution to adequately investigate a crime, rendering *Brady* inapplicable to this appeal. In this regard, there is "a clear distinction between the failure to disclose evidence and the failure to develop evidence." *People v Coy*, 258 Mich App 1, 22; 669 NW2d 831 (2003). "[N]either the prosecution nor the defense has an affirmative duty to search for evidence to aid in the other's case." *Id*.

---

[2] *Posey* was decided a few months before defendant's trial.

at 21. "Absent a showing of suppression of evidence, intentional misconduct, or bad faith, the prosecutor and the police are not required to test evidence to accord a defendant due process." *Id*.

Again, as noted, defendant argues that "[t]he failure to analyze the rifle and bullets supplied by Dr. Sung violated [his] right to a fair trial." However, defendant does not elaborate upon this argument. For example, defendant does not assert that the prosecution or other state actor deliberately lost or refused to test the rifle and bullets at issue in an attempt to prevent him from obtaining exculpatory evidence on his behalf. See generally, *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017) (discussing the different standards that may apply "[t]o warrant reversal on a claimed due-process violation involving the failure to preserve evidence"). Moreover, we are unclear as to which gun defendant is referring—while Mapp's attorney turned over two guns to the police, the record does not indicate that the gun used by defendant was ever recovered. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (quotation marks and citation omitted). Thus, relief is not warranted.

In any event, we note that the surveillance video showed defendant firing his gun into the crowd, and his theory of the case was that he acted in self-defense. As a result, there was no question that defendant was present at the shooting and shot a gun into the crowd, and his own theory of the case was that he was responsible for Franklin's death. Therefore, defendant's right to a fair trial was not violated by the prosecution's alleged failure to adequately investigate the shooting.

## V. PROSECUTORIAL ERROR[3]

Lastly, defendant argues that he is entitled to relief because the prosecutor committed error when he commented about Mapp not testifying during closing argument. We disagree.

## A. STANDARD OF REVIEW

"In cases alleging prosecutorial misconduct, issues are preserved by contemporaneous objections and requests for curative instructions." *Evans*, 335 Mich App at 88 (quotation marks and citation omitted). In this case, defendant objected to the prosecutor's comment after closing arguments ended and the jury was dismissed. Moreover, defendant moved for a new trial after the jury's verdict. Because defendant did not contemporaneously object or request a curative instruction, his claim of prosecutorial error is unpreserved. "Unpreserved issues are reviewed for plain error affecting substantial rights." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

---

[3] "[A]lthough the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (quotation marks and citation omitted).

## B.  ANALYSIS

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).  "A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014).  "A prosecutor can deny a defendant his or her right to a fair trial by making improper remarks that so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (cleaned up).  "Generally, prosecutors are accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (cleaned up).  Prosecutors are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

This Court evaluates "instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments." *Lane*, 308 Mich App at 62-63.  "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (citations omitted).

"A defendant's right to testify in his own defense arises from the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011).  Further, "[a] defendant in a criminal case has a constitutional right against compelled self-incrimination and may elect to rely on the presumption of innocence." *People v Fields*, 450 Mich 94, 108; 538 NW2d 356 (1995) (quotation marks and citations omitted).  To that end, "no reference or comment may be made regarding defendant's failure to testify." *Id*. at 108-109.  "Such remarks are prohibited because they ask the jury to draw the inference that the defendant is guilty or hiding something merely because he has not taken the stand." *People v Mann*, 288 Mich App 114, 120; 792 NW2d 53 (2010) (quotation marks and citation omitted).

During closing arguments, the prosecutor noted that the surveillance video showed defendant's guilt.  The prosecutor stated: "The star witness in this case didn't testify at all.  The star witness is Mr. Mapp in the video."  The prosecutor made this comment while referring to the surveillance video.  The prosecutor added: "[T]he warning shots [by Mapp] worked . . . .  Everybody started running after the warning shots."  After noting that Mapp did not testify, the prosecutor clarified, Mapp "shows you that deadly force wasn't necessary by his actions in the video.  He shows you he wasn't afraid that he was about to be killed."  Mapp "didn't believe that he was in danger of being killed or hurt seriously.  So he fired warning shots in the air.  But not [defendant]."

In other words, according to the prosecutor, Mapp was the "star witness" against defendant's theory that he felt threatened by the crowd and had to fire shots into the crowd.  If the crowd dispersed after Mapp fired the warning shots, defendant was not justified in using deadly force.  Considered in context, the prosecutor's comment that "[t]he star witness is Mr. Mapp in the video" was appropriate because it merely informed the jury that Mapp's conduct in the video was some of the prosecutor's strongest evidence of defendant's guilt.  Arguably, however, the isolated sentence by the prosecutor, "[t]he star witness in this case didn't testify at all," was plain error because it was a commentary on Mapp's refusal to testify, which transferred an inference of guilt to defendant from his own refusal to testify.  See

*Hayes v United States*, 329 F2d 209, 222 (CA 8, 1964) ("Permitting comment upon the failure of a defendant to testify constitutes prejudicial error as to the non-testifying defendant.").

However, the prosecutor's comment does not require reversal. The surveillance video provided the jury with clear evidence of the shooting, including what happened shortly before, during, and after defendant's decision to fire his gun. Moreover, defendant's theory of the case was self-defense, thereby admitting responsibility for the death, and the jury was easily able to assess this issue based upon the video and the testimony of multiple witnesses who were present at the scene. Further, the trial court instructed the jury: "Every Defendant has the absolute right not to testify. When you decide the case you must not consider the fact that either did not testify. It must not affect your verdict in any way." The trial court added: "The lawyers' statements and arguments and any commentary, not evidence. They are only meant to help you understand the evidence and each side's legal theories." "Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (quotation marks and citation omitted). Because defendant failed to establish prejudice resulting from the plain error, *Carines*, 460 Mich at 763, he is not entitled to relief for this issue.

## V. CONCLUSION

For the reasons discussed above, we affirm.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michael J. Riordan